PRICE et al., Appellants, v. ATKINSON, Respondent.

**St. Louis Court of Appeals, February 27, 1906.**

1. **SALES: Revocation of Order.** The revocation of an order for goods, by letter or by telegram, does not take effect until the letter or telegram is actually received, and if it is received after the goods are shipped it is too late.

2. ————: **Description of Articles Sold: Void Contract for Indefiniteness.** An order for three hundred and eighty dollars worth of jewelry to be made up of articles named in a price list contained in the order, without specifying the quantity, quality or price of any of the articles ordered, was void because the subject-matter of the contract was incapable of identification.

3. ————: ————: ————: **Executed Contract.** The fact that the seller shipped goods amounting in value to the sum mentioned in the order, did not make the contract of sale binding because it was so indefinite that it was incapable of being executed.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

AFFIRMED.

*John S. Farrington* and *J. B. Todd* for appellants.

*Massey, Delaney & Delaney* for respondent.

STATEMENT.—Plaintiffs are partners doing business under the firm name of the Puritan Manufacturing

Company, of Iowa City, in the State of Iowa. They are manufacturers of jewelry and novelties. Defendant is a merchant doing business in the city of Springfield, Missouri. On January 30, 1905, C. L. Turley, plaintiffs' traveling salesman, presented himself at defendant's place of business and took from him what purports to be an order for goods of plaintiffs' manufacture. So much of the order as is pertinent to the issues in the case is as follows:

"Belt buckles or pins from 15c to $2 each; charms and lockets from 15c to $2.50 each; pin sets (three in set) from 15c to $1.25 per set; dress button sets (three in set) 16c to $1 per set; single studs 50c each; ditto link sleeve buttons from 15c to $1.25 pair; emblem pins and buttons 30c to 50c each; lace 16c to $1.50 each.; collar buttons from 12c per doz. to $1.44 per doz.; scarf pins from 8c to $1.25 each; set and signet rings from 25c to $2.25 each; friendship and baby rings from 15c to 35c each; chased band rings from 35c to 95c each; plain band rings from 50c to $1.05 each; silk fobs from 90c to $1.50 each; vest chains or metal fobs $1.25 to $3 each; sleeve buttons from 15c to $1.25 per pair; ladies long and neck chains from 75c to $2.75 each; hat pins from 10c to 50c each; bracelets from 85c to $2.25 each. Delivered f. o. b. transportation companies and amounting to $380, which can be paid one-fourth in three months, one-fourth in six months, one-fourth in nine months and one-fourth in twelve months, without interest, if acceptances are given within ten days from date of invoice; otherwise, terms are net cash fifteen days or six per cent discount cash ten days. The Puritan Manufacturing Company, is hereby authorized at their option to reduce, but not to increase the amount of this order, and if thus reduced same to stand as if originally so given. "(P. O.), Springfield. (State), Mo. (County), Greene.

Date, Jan 20, 1905.

"Puritan Mfg. Co., Factory:

"Please ship at your earliest convenience the goods

listed in this order upon the terms named herein and no others, all of which I fully understand and approve.

"Express Office, Springfield.        "J. E. ATKINSON,

                                        "Owner of Store.

"Freight Office, Springfield.        "C. L. TURLEY,

                            "Salesman for P. Mfg. Co.

"Loan Show Case, No. 20."

The order was mailed to plaintiffs and received by them on February 1, 1905. Their evidence shows that on the day of the reception of the order, they packed the show case and delivered it to the Chicago, Rock Island & Pacific Railroad Company, consigned to the defendant at Springfield, Missouri, and selected and packed three hundred and eighty dollars worth of jewelry of their own manufacture and delivered the package to the United States Express Company to be carried to Springfield, and there delivered to defendant. On the same day plaintiffs wrote defendant as follows, and inclosed an invoice of the goods:

"February 1, 1905.

"J. E. Atkinson,

        "Springfield, Mo.

"Dear Sir: We have received your order of January 30th, given our Mr. Turley, for an assortment of our goods, which we believe we have filled in a way to give you entire satisfaction. We thank you very much for the order, and trust that our business relations may be long and pleasant and profitable to all parties.

"The show case goes forward by freight, taken apart and compactly packed to insure safety and reduce transportation charges. Before shipment, it was set up and all parts carefully fitted. A card is inclosed with the case, giving directions for putting it together, and we think you will have no difficulty in doing so. If any of the parts do not seem to fit, it is undoubtedly because you have not tried the right piece in the right place; a little patience will put it together all right. We inclose B-L herewith for the same.

"The other goods go forward by express, as the transportation companies will not accept this class of goods by freight, etc.

"Yours very truly,

"PURITAN MFG. COMPANY."

The goods delivered to the express company arrived at Springfield on the evening of February 5, 1905, and on the following morning an agent of the Wells-Fargo Express Company carried the package to defendant's place of business and offered to deliver it to him. Defendant refused to receive the package.

Plaintiffs' evidence tends to show that the jewelry shipped defendant was well worth three hundred and eighty dollars. The goods were never returned to plaintiffs, and the evidence does not show what became of them.

On February 1, 1905, defendant wrote plaintiffs as follows and two days later wired them his cancellation of the order:

"Springfield, Mo., Feb. 1, 1905.

"Puritan Mfg. Co.

"Iowa City, Iowa.

"Gentlemen: Please cancel our order of January 30th. We cannot possibly do you and ourselves justice on this deal. We already carry four lines and to take on the fifth will compel us to let one or the other go without the attention that it deserves. You will appreciate the situation.

"Very truly yours,

"J. E. ATKINSON, J. S. A."

The telegram and letter were received by plaintiffs on the same date, February third. In reply to the telegram—it having been received first—plaintiffs wrote the defendant as follows:

"February 3, 1905.

"Mr. J. E. Atkinson,

"Springfield, Mo.

"Dear Sir: Your telegram as follows: 'Don't ship

jewelry will not receive it' was just received. We are very sorry that you did not get your telegram to us earlier, as we would have been able to have stopped the shipment for you, but the goods had all gone out before your telegram was received. As you will remember, you gave your order on January 30th, it was received by us on February 1st, the show case was shipped on February 1st and the jewelry on February 2nd. Of course, under the terms and conditions of your order with us these goods became your property when they were delivered by us to the transportation companies at Iowa City, Iowa. We would, therefore advise that you take up the goods as soon as received, for should you fail to do so they will undoubtedly be sold for charges by the transportation companies and of course, we cannot recall the goods or accept a return of them at this time as we are entitled to the benefit of our contract with you. Had we received your telegram yesterday morning we would not have made shipment of the goods. We are very sorry that the matter is in this shape, but of course, it is through no fault of our own.

"Yours very truly,

"PURITAN MFG. COMPANY."

The petition is in two counts, the first on the contract for the sale and delivery of the goods, the second for the value of the goods sold and delivered.

The answer was a general denial. The issues were submitted to the court, sitting as a jury who, at the close of all the evidence, on defendant's motion, gave an instruction in the nature of a demurrer to the evidence and rendered judgment for the defendant. A motion for new trial having been overruled by the court, plaintiff appealed.

BLAND, P. J. (after stating the facts).—1. An acceptance of an order for goods is effectual from the moment the letter of acceptance, properly directed and stamped, is deposited in the post office, or if by wire, the

moment the telegram is paid for and delivered to the telegraph company for transmission. But a revocation of an order does not take effect until the letter or telegram revoking the order is actually received, hence defendant's letter and telegram were too late to revoke the order. The contract, if the order itself was sufficient, was completed by plaintiffs' acceptance, before the arrival of either defendant's letter or telegram of revocation, therefore, if the subject-matter of the order is sufficiently definite and certain in its terms to constitute a contract, defendant cannot escape liability for the agreed price or value of the goods by his refusal to receive them. The order contains a list of articles giving the minimum and maximum prices of each article, graded, supposedly, according to quality. Neither the number or the price of any of the articles is specified in the order. Defendant ordered three hundred and eighty dollars' worth of jewelry from plaintiffs' stock, to be made up of the articles named in the order, but no definite quality, price or number of any one or more of these articles is mentioned. The first item, "buckles or pins," might be filled with all buckles and no pins, or with all pins and no buckles, or with both buckles and pins, at fifteen, twenty-five, thirty, fifty, seventy-five cents, one or two dollars per dozen, and it might be filled by one dozen of either, or both buckles and pins, or with one hundred dozen of either or both. So with every other article named in the order, quantity, quality nor price are anywhere mentioned, therefore, the subject-matter of the contract is too indefinite to be capable of identification. Where this is the case there is no meeting of minds and hence no contract. [1 Parsons on Contracts (9 Ed.), sec. 525; Cold Blast Transportation Company v. Kansas City Bolt & Nut Company, 114 Fed. 77; s. c., 57 L. R. A. 296.]

2. But it is contended by plaintiffs that, notwithstanding the contract was unenforcible for want of mutuality, yet as it was executed by them, it became

clothed with a valid consideration relating back to the date of the order and is binding on the defendant. [Jones v. Durgin, 16 Mo. App. 370; Lindell v. Rokes, 60 Mo. 251; Cold Blast Transportation Co. v. Kansas City Bolt and Nut Company, supra.] This would be so if the void order had specified the goods with such definiteness as to have enabled the plaintiffs to deliver the identical goods ordered or goods of the identical quality ordered. This was not done. The plaintiffs, not the defendant, selected the goods that were shipped, and it cannot be ascertained by comparing the order with the invoice, that the goods delivered to the express company are the same goods, or are of the same quality and price as those mentioned in the order. Indeed, the designation of the goods in the order is so vague and uncertain that they are incapable of identification, and hence the defendant did not make an order on plaintiffs for goods that could be accepted or that was capable of being executed so as to bind the defendant.

The judgment is affirmed. All concur.