**MEDICINE SHOPPE INTERNATIONAL, INC., Plaintiff-Appellant,**

v.

**J–PRAL CORPORATION, Defendant-Respondent.**

**No. 45703.**

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 9, 1983.

Motion For Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1983.

Case Transferred to Supreme Court Nov. 22, 1983.

Case Retransferred to Court of Appeals Jan. 17, 1984.

Stephen H. Rovak and Ralph M. Friederich, St. Louis, for plaintiff-appellant.

S. Michael Thomas, Clayton, for defendant-respondent.

KELLY, Judge.

This is an appeal by Medicine Shoppe International, Inc., hereinafter "MSI", from a judgment dismissing appellant's petition seeking to enjoin 1) during the pendency of an arbitration proceedings, J-Pral Corporation, hereinafter "J-Pral," from (a) operating a licensed pharmacy other than as a Medicine Shoppe Pharmacy; (b) displaying any signs, advertisements on or at the site of the licensed pharmacy; (c) representing to the public, or third parties, in any manner, that the licensed pharmacy is other than a Medicine Shoppe Pharmacy; 2) for an Order requiring J-Pral to submit the matter to arbitration; and 3) for an Order enforcing the arbitrator's award therein. We affirm.

The sole question for decision is whether the trial court erred in dismissing MSI's First Amended Petition on the grounds it lacked personal jurisdiction over J-Pral Corporation.

Because of the posture in which this case has come to us we must turn to MSI's First Amended Petition, the exhibits attached thereto and incorporated by references therein, and affidavits filed in support of and in opposition to J-Pral's Motion to Dismiss to ascertain the facts before the trial court at the time of the ruling from which this appeal emanates.

From these we discern that MSI is a Delaware Corporation having its principal place of business in St. Louis County, Missouri, and that J-Pral is a Florida Corporation with its principal place of business in Clearwater, Florida. MSI has developed a trademark, trade name, logo, systems, methods and assistance for the operation of pharmacies. It licenses others, through license agreements, to utilize its trademarks, trade name, logo, business format and assistance in the operation of pharmacies.

On or about October 9, 1979, MSI and "Tony" Comitos entered into the License Agreement, hereinafter "the Agreement," whereby MSI licensed Mr. Comitos to utilize MSI's trademark, trade name, logo, and services, for and in consideration of the payment of specified fees and royalties within a "Territory" in Pinellas County, Florida. The signature of the officers of MSI to this Agreement were affixed thereto in St. Louis County, Missouri.

According to the terms of the Agreement, which are germane to this appeal, the Licensee may not assign the Agreement without MSI's written consent or without affording it a "Right of First Refusal." The Agreement further provides that any controversy or claim arising out of or relating to the Agreement, shall be submitted to arbitration in the City or County of St. Louis, Missouri, in accordance with the rules of the American Arbitration Association; that any such award of the arbitrator shall be final, and judgment therein may be entered in any court having jurisdiction. If the Licensee actually or anticipatorily breaches the Agreement, the Grantor is, in addition to any other remedies and damages available, entitled to an injunction restraining such violations and to compel specific performance of the terms and conditions of the Agreement, terminable at such time as a final and binding determination is made by the arbitrator, to the extent such determination is in conflict with such injunction or compulsion.

The Agreement also provides that: "The License Agreement shall be deemed *for all*

*purposes* to have been made in the state of Missouri and shall be governed by and construed under and in accordance with the laws of the state of Missouri." (Emphasis supplied.)

Sometime in 1980 Mr. Comitos, pursuant to the Agreement, commenced the operation of a pharmacy in Clearwater, Florida, and utilized the registered trademark, trade name, services and benefits, etc., conferred upon him by reason of the Agreement until, on or about November 1, 1980, when Mr. Comitos and J-Pral entered into an Assignment and Amendment of License Agreement whereby Mr. Comitos assigned all of his interests in the Agreement with MSI to J-Pral and J-Pral accepted said Assignment and agreed to perform and comply with all the terms and conditions of the Agreement as amended. J-Pral thereupon purchased the assets of the pharmacy and continued operating it as an MSI pharmacy, utilizing MSI's registered trademark, trade name and logo through at least March 6, 1981. Between November 1, 1980, and the date of the institution of this suit, J-Pral ordered and received materials and inventory bearing MSI's trademark and logo and in December, 1980 paid MSI the royalties due from the operation of the pharmacy. MSI materials and inventory were still in and upon the pharmacy as of February 26, 1981.

On or about November 1, 1980, the executed Assignment and Amendment of License Agreement bearing the signatures of Mr. Comitos and Mr. Joseph Prado, Jr., President, J-Pral, on behalf of J-Pral Corporation, were mailed to MSI for its approval, pursuant to Paragraph VIII of the Agreement. This Assignment was, admittedly, received by MSI sometime in early November, 1980, and executed on behalf of MSI by Ronald T. Hofmeister, Vice-President of MSI, sometime thereafter. Mr. Hofmeister, in his affidavit, states he does not know the date he signed the Assignment, but, by letter of January 27, 1981, he forwarded to Mr. Prado an executed copy of the Assignment and Amendment of License Agreement approved by Mr. Comitos and Mr. Prado on November 1, 1980.

Mr. Comitos and Mr. Prado, as President of J-Pral Corporation, in a letter dated January 14, 1981, addressed to "Gerry Rhydderch, Vice-President Franchise Development," MSI, informed Mr. Rhydderch that the Assignment and Amendment had been rescinded. This letter was sent "Certified Mail," and the receipt bears a signature of one "Barb Mcllan" and the date of delivery as "1/23/81."[1] Mr. Hofmeister, in his affidavit, states that at the time he affixed his signature to the Assignment and Amendment, he had no knowledge of any purported recision by J-Pral.

In April, 1981, MSI caused a Demand for Arbitration to be filed with the American Arbitration Association pursuant to Article XII of the Agreement naming J-Pral respondent, but J-Pral objected to being made a party to the arbitration proceedings because, as it claimed, it was not a party to the Agreement. On September 29, 1981 the Arbitration Tribunal Administration notified the parties that these matters were themselves arbitrable and subject to arbitration.

We cannot ascertain from the record on appeal when this suit was instituted, but MSI filed its First Amended Petition on or about July 31, 1981, and service was obtained on Joseph Prado, Jr., Registered Agent and President of J-Pral Corporation, on August 18, 1981, in Clearwater, Florida, by John A. Peak, Deputy Sheriff of Pinellas County, Florida.

On September 15, 1981, J-Pral filed its Motion to Dismiss for Lack of Jurisdiction, and attached as exhibits to a memorandum in support thereof the letter of January 14, 1981, referred to hereinabove, a copy of the return receipt for that letter, a copy of the letter of Mr. Hefmeister of January 27, 1981, and the executed copy of the Assignment and Amendment of License Agreement dated November 1, 1980.

On October 23, 1981, when J-Pral's Motion to Dismiss was called up for hearing,

[1]. This signature is hardly legible; the last name appears to be the name quoted hereinabove.

J-Pral filed Mr. Prado's affidavit wherein he stated, among other things, that J-Pral has never done business, sought to do business, or registered to do business in Missouri; that it never made a contract in Missouri, committed a tort in Missouri, or owned or used real property within the state of Missouri. He further denied that J-Pral was using any marks or logos or other property of MSI.

MSI filed its Brief in Opposition to Motion to Dismiss together with affidavits in support of its position.

Thereafter, on March 24, 1982, the trial court sustained J-Pral's Motion to Dismiss for Lack of Jurisdiction over the person of J-Pral. MSI filed a timely Notice of Appeal.

MSI contends that the trial court erred in sustaining J-Pral's Motion to Dismiss for Lack of Jurisdiction because (1) the court acquired personal jurisdiction over said defendant by reason of Sec. 506.500.1(2) RSMo 1978, because J-Pral made a contract within this state, and service was had upon it pursuant to the long-arm provisions of said Sec. 506.500; (2) that MSI made a prima facie showing that J-Pral and MSI, by their conduct, were parties to the contract providing for arbitration in the state of Missouri, and by said provision in the contract the Missouri courts have jurisdiction to enforce the Agreement; and (3) that by its acceptance of the Assignment and Amendment of License Agreement in Missouri by executing it here, MSI made a prima facie case that J-Pral had entered into a contract in Missouri by tendering a written contract to MSI in Missouri which it accepted by executing the contract in Missouri.

J-Pral's position is that it never became a party to a contract in Missouri; and, even if it had, that would not give Missouri courts personal jurisdiction over it even though the contract provided for arbitration in Missouri. J-Pral further contends that the mere tendering of an offer to MSI in Missouri does not submit it to personal jurisdiction in the courts of Missouri; and the action of the Arbitration Tribunal did not decide the question of whether the Missouri courts had personal jurisdiction over J-Pral because that question was not before the Tribunal.

MSI relies upon the long-arm statute § 506.500.1(2) as the basis for acquiring personal jurisdiction over J-Pral. The threshold question then, is whether J-Pral made a contract within the state of Missouri.

▇▇▇ Where the question of personal jurisdiction is raised in a Motion to Dismiss for Lack of Personal Jurisdiction, MSI concedes that it has the burden of making a prima facie showing that the trial court has personal jurisdiction over the defendant because it made a contract in Missouri. *State ex rel. Deere and Company v. Pinnell,* 454 S.W.2d 889, 893[2] (Mo. banc 1970). When as here, the motion is based on facts not appearing of record, the court may hear the matter on affidavits presented by the respective parties, or it may direct that the matter be heard wholly or partly on oral testimony or deposition. Rule 55.28, V.A. M.R. Where affidavits are offered in support of a Motion to Dismiss for Lack of Jurisdiction the trial court may believe or disbelieve the statements made in said affidavits. *Flegel v. Holmes,* 614 S.W.2d 779, 780[3] (Mo.App.1981).

MSI contends that it made a prima facie showing that it and J-Pral, by their conduct, were parties to the License Agreement, a contract made in and governed by Missouri Law. The conduct of the parties supportive of this argument is: 1) J-Pral's knowledge of the License Agreement gained through its execution of the Assignment and Amendment of License Agreement; 2) J-Pral's use of MSI's registered trademark, trade name and logo; 3) J-Pral's ordering and receipt of materials and inventory bearing the MSI trademark and logo; and 4) J-Pral's payment of royalties in the month of December, 1980.

As we understand MSI's position, by reason of the conduct of the parties an assignment of the Agreement will be implied in law and there is no need for a formal assignment.

The affidavit of Mr. Prado, as President of J-Pral, directs its statement of facts against MSI's acceptance of J-Pral's offer to take assignment of the Agreement in question and asserts that J-Pral *"is not,* as plaintiff alleges, using any marks or logos or other property of Medicine Shoppe International, Inc.," (emphasis supplied). What his affidavit does not refute are MSI's allegations that on November 1, 1980, J-Pral purchased all of the assets of the Licensed Pharmacy, and continued to operate it as a Medicine Shoppe Pharmacy, utilizing some, but not all, of the marks and logos of MSI as alleged in the First Amended Petition, filed on July 31, 1981. Mr. Prado's affidavit was notarized on the 1st day of October, 1981, and, as we read it states that on that date J-Pral was not using MSI's logo or other property. It utterly ignores what it was doing, if anything, with respect to these allegations between November 1, 1980, and October 1, 1981. The thrust of this affidavit is that J-Pral's offer had been revoked prior to its acceptance, not whether, by the parties conduct, an assignment of the License Agreement might have been implied in law.

■ It is fundamental that for a contract to come into existence there must be an unequivocal acceptance of the offer. *Thacker v. Massman Const. Co.,* 247 S.W.2d 623, 629[8] (Mo.1952). An uncommunicated intention to accept an offer is not an acceptance, *Koch-Laumand Contracting, Inc. v. May Department Stores Company,* 623 S.W.2d 52, 55[3] (Mo.App.1981), and to be effective, revocation of an offer must be communicated to the offeree before he or she has accepted. *Rodgers v. Rodgers,* 505 S.W.2d 138, 144[8] (Mo.App.1974); *Lynch v. Webb City School District No. 92,* 418 S.W.2d 608, 617[11] (Mo.App.1967).

The question remains whether MSI accepted J-Pral's offer to enter into the Assignment and Amendment of Mr. Comitos' License Agreement.[2]

Article VIII of the Agreement prohibits the assignment of any right or interest of the Licensee in the Agreement without MSI's written consent. Where, however, the Licensee receives a bona fide offer to purchase the interest of the Licensee in the Agreement, or the pharmacy operated by the Licensee under the terms of the Agreement, the Licensee is required to give written notice to MSI of such offer and the Licensee's intention to accept said offer so that MSI might exercise a "Right of First Refusal" within 30 days after receipt of notice of the Licensee's intention to sell its interest in the Agreement and/or its pharmacy. If MSI does not exercise its "Right to First Refusal," then the Licensee may assign its interest in the Agreement and the pharmacy upon receipt of MSI's written consent. MSI's consent cannot be withheld if the proposed transferee (a) is not a competitor of MSI or its affiliates, (b) is adjudged by MSI to be financially responsible and of good repute, and (c) executes a standard Licensee Agreement in the form then in use by MSI.

■ From the pleadings and the affidavits filed in support of the positions of the respective parties we conclude that the trial court could have found that MSI's letter of acceptance of J-Pral's offer came after J-Pral's letter of January 14, 1981, revoking its offer had been received by MSI on January 23, 1981. Testimony that a letter was sent by certified mail is the equivalent to a statement that it was properly addressed, stamped and deposited in the proper place for receipt of mail, and the return receipt itself is prima facie evidence of delivery of the letter shown on the receipt. *Crain v. Webster Electric Cooperative,* 568 S.W.2d 781, 785–786[1] (Mo.App.1978). This is, however, a rebuttable presumption and proof to the contrary creates an issue for the trier of fact. *Cohn v. Missouri Terminal Oil Co.,* 590 S.W.2d 381, 383[4] (Mo.App.

**2.** The Amendments to the Comitos License Agreement are minor. One change was deletion of a paragraph relative to the lease of the premises in which the pharmacy was operated; the instruction and training of the Licensee's employees; removal of the term "employee" from the "Non-Competition" paragraph of the Agreement; and deletion of the requirement that J-Pral pay MSI either an origination fee or a transfer fee.

1979); *Price v. Ford Motor Credit Company,* 530 S.W.2d 249, 253[5] (Mo.App.1975).

■ Mr. Hofmeister's affidavit attempts to establish that the Assignment and Amendment of License Agreement was executed by him on behalf of MSI, at a time he cannot recollect, and when he had "no knowledge of any purported rescission by 'J-Pral.'" There can be no question, however, that the communication of MSI's acceptance was not posted until January 27, 1981,[3] and even though Mr. Hofmeister executed the Assignment and Amendment of License Agreement on some date prior to January 23, 1981, said acceptance could not convert the J-Pral offer into a contract until it was posted. *American Institute of Marketing Sys., Inc. v. Brooks,* 469 S.W.2d 932, 934 (Mo.App.1971); *Price v. Atkinson,* 117 Mo.App. 52, 94 S.W. 816, 818[1] (1906). An uncommunicated intention to accept an offer does not constitute acceptance. *Koch-Laumand, etc. v. May Department Stores Company,* 623 S.W.2d 52, 55[3] (Mo.App. 1981).

■ A corporation may acquire knowledge or notice only through its officers and agents, and is charged with knowledge of all material facts of which they acquire knowledge while acting in the course of their employment and within the scope of their authority, even though they do not in fact communicate it. *Packard Mfg. Co. v. Indiana Lumbermens Mut. Ins. Co.,* 356 Mo. 687, 203 S.W.2d 415, 421[7] (1947).

As we have stated hereinabove, the letter rescinding the Assignment and Amendment of License Agreement was addressed to Mr. Rhydderch, Vice-President, Franchise Development of MSI, at the same address appearing on the letterhead of Mr. Hofmeister's letter of January 27, 1981, to Mr. Prado with the executed copy of the Assignment and Amendment of License Agreement. Although Mr. Hofmeister denied any knowledge of the rescission letter of January 14, 1981, in his affidavit, we note the absence of any affidavit from Mr. Rhydderch with respect to this question and any denial that the person who signed the receipt for the certified mail on January 23, 1981, was authorized to do so.

■ We believe the trial court could have found that MSI had not consented to the Assignment and Amendment of License Agreement prior to receipt of the letter of January 14, 1981, rescinding same. Nevertheless, MSI's contention that there was, in fact, an assignment and amendment of the Agreement in accordance with the terms of the document titled Assignment and Amendment of License Agreement dated November 1, 1980, because both parties operated pursuant to that agreement, must now be scrutinized.

■ J-Pral and Mr. Comitos employed the word "rescind" in their letter of January 14, 1981. To "rescind" a contract is not merely to terminate it, but to abrogate and undo it from the beginning; it necessarily involves a repudiation of the contract and the refusal of the moving party to be further bound by it. *Bacon v. Boss,* 290 S.W.2d 207, 210[2] (Mo.App.1956). Before there can be any "rescission" there must be a contract completely formed and in force or at least provisionally binding on the parties. *Richard Bertram & Co. v. Barrett,* 155 So.2d 409, 411[5] (Fla.App.1963). By employing the word "rescind" the trial court could conclude Mr. Prado was of the opinion that MSI had approved the Assignment and Amendment of License Agreement he and Mr. Comitos had submitted to MSI early in November, 1980.[4]

This conclusion is supported by J-Pral's taking over the operation of the Medicine Shoppe Pharmacy previously operated by

---

**3.** January 23, 1981, fell on Friday and January 27, 1981, on the Tuesday following.

**4.** J-Pral contends the rescission referred to in its letter of January 14, 1981, referred to the assignment of Mr. Comitos' interest in the lease agreement and purchase of his pharmacy. However, the letter states that "the subject Assignment and Amendment has been rescinded" and is, at best, ambiguous. As we understand the position of J-Pral, it would not take the assignment of Mr. Comitos' Agreement with MSI without the amendments it proposed in the document of November 1, 1980.

Mr. Comitos on November 1, 1980, purchasing from MSI certain pharmaceutical supplies which bore MSI's trade name, trademark, and logos, and paying the royalties due MSI under the terms of the Assignment and Amendment of Lease Agreement in December, 1980.

■ The manifestation of acceptance of an offer need not be made by the spoken or written word; it may also come through the offeree's conduct in accord with the terms of the offer. *Wiggins Ferry Company v. Ohio & Mississippi Railway Company,* 142 U.S. 396, 408–409, 12 S.Ct. 188, 191–192, 35 L.Ed. 1055[3, 4] (1892); *Moore v. Kuehn,* 602 S.W.2d 713, 718–719[6] (Mo.App.1980).

■ MSI evidenced its consent to the Assignment and Amendment of License Agreement by filling J-Pral's orders for pharmaceuticals and accepting the royalty payment in accord with the terms of the Agreement.

The proviso that no licensee may assign the License Agreement or his or her interest therein without the written consent of MSI is tempered by the first refusal proviso where the licensee receives a bona fide offer to purchase or acquire the licensee's interest in the Agreement. MSI is allowed a thirty day period after receipt of notice of the offer within which it might exercise its First Refusal Right. There is no evidence that MSI made any effort to exercise its Right of First Refusal, or indicated, in any way, that it would not give its written consent to the J-Pral transaction. This restriction on assignment of the License Agreement is for the benefit of MSI, § 322 Restatement of Contracts 2nd, and might be waived by MSI. *Sillman v. Twentieth Century-Fox Film Corporation,* 3 N.Y.2d 395, 165 N.Y.S.2d 498, 144 N.E.2d 387, 391[6] (1957); *Trubowitch v. Riverbank Canning Co.,* 30 Cal.2d 335, 182 P.2d 182, 187[8] (1947).

We conclude, and hold, that MSI pled sufficient facts and supported them by affidavits raising a factual issue whether the parties, by their conduct, became parties to the Agreement, as amended by J-Pral's Assignment and Amendment of License Agreement of November 1, 1980.

■ MSI relies upon the long-arm statute § 506.500.1(2) RSMo 1978 to obtain personal jurisdiction of J-Pral, a non-resident corporation. The reach of said statute is co-extensive with that of due process. *State ex rel. Deere and Company v. Pinnell,* supra, and in order for Missouri courts to exercise personal jurisdiction over a non-resident defendant, the *defendant's acts* must fall within one of the categories enumerated in the long-arm statute and must constitute sufficient minimum contacts with the state so that the exercise of jurisdiction by Missouri courts satisfies due process requirements. *M & D Enterprises, Inc. v. Fournie,* 600 S.W.2d 64, 68[2] (Mo. App.1980).

■ We must first decide whether the requirements of § 506.500.1(2) have been met; i.e., whether the cause in issue arose from the making of a contract within the state of Missouri.[5]

We are dealing here with an assignment of an already existing franchise agreement which by its terms provided that "This License Agreement shall be deemed for all purposes to have been made in the state of Missouri, and shall be governed and construed under and in accordance with the laws of the state of Missouri." J-Pral certainly had knowledge of this provision in the Agreement because it had its lawyer study it and submit to MSI suggested amendments to the Agreement before it would execute the Assignment and Amendment of License Agreement of November 1, 1980. Of the amendments suggested, however, none applied to this proviso in the Agreement.

5. MSI, in its first Amended Petition alleged: "This Court has jurisdiction over the parties pursuant to § 506.500 RSMo in that (1) the contracts hereinafter to be described were made and entered into within this state, and (2) pursuant to agreement of the parties." In its brief it refers to § 506.500.1(1) which refers to "[t]he transaction of any business within this state."

J-Pral, as we have hereinabove held, by its conduct ratified the Assignment and Amendment to the License Agreement and thereby stood in the shoes of the former franchisee, Mr. Comitos, in a contract which was deemed for all purposes "to have been made in Missouri."

Furthermore, J-Pral, in the Assignment and Amendment of License Agreement covenanted and agreed to assume, perform and comply with all the terms, conditions and obligations of the License Agreement, all as fully as if the Grantor and Assignee were the original grantor and licensee to the Agreement.

As Assignee of the Agreement, which was made within the state of Missouri, we conclude that J-Pral, for the purposes of § 506.500.1(2) made a contract within the state of Missouri.[6]

We turn now to consideration of the due process clause requirements and decide whether J-Pral had sufficient contacts with the state of Missouri so that maintenance of this suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

In determining whether a non-resident defendant has sufficient minimum contacts with Missouri for its courts to acquire personal jurisdiction over it, the factors to be considered are: (1) the nature, quality and quantity of the contacts with Missouri; (2) the relationship of the cause of action to those contacts; (3) the interest of Missouri in providing a forum for its residents; and (4) the convenience and inconvenience to the parties. *State ex rel. People's Bank of Bloomington, etc. v. Stussie,* 536 S.W.2d 934, 938[1] (Mo.App.1976).

Our inquiry now shifts to the contacts of J-Pral with the state of Missouri and whether they constitute sufficient contacts to satisfy due process.

The record does not reveal who initiated the assignment procedures, but we believe it is a fair inference that it was the Licensee, Mr. Comitos, or both Mr. Comitos and J-Pral who did so. We draw this inference from the provisions of the Agreement that an assignment of the Agreement could not take effect without MSI's consent. The Agreement requires notice to MSI if the Licensee intends to accept a bona fide offer for the purchase or acquisition of the Licensee's interest in the Agreement so that MSI could either exercise its right of first refusal, or, after ascertaining whether the proposed assignee was (1) a competitor of MSI or its affiliates, (2) was financially responsible and of good repute, (3) would pay to MSI the then current transfer fee charged by MSI for administering such transfer,[7] including training and consulting services, and (4) execute a standard License Agreement in the form then in use by MSI, give its written consent to the assignment. It would logically appear that the Licensee would be the one to initiate the procedures for the assignment of his License pursuant to the terms of the Agreement.

The record does establish that sometime prior to November 1, 1980, MSI submitted to J-Pral a form for the proposed assignment of Mr. Comitos' interest in the Agreement. This was, however, rejected by Mr. Prado on behalf of J-Pral. Mr. Prado's lawyer then prepared the Assignment and Amendment to License Agreement which was executed by Mr. Comitos and Mr. Prado on behalf of J-Pral on November 1, 1980 and mailed by Mr. Prado's lawyer to MSI on or about that date.

---

**6.** The establishment of two franchised dealers for the purpose of the sale and service of aircraft was held to have constituted "transaction of any business within this state" within the meaning of § 506.500.1(1). *State ex rel. Newport v. Wiesman,* 627 S.W.2d 874, 877[2] (Mo. banc 1982). See also *Ponder v. Aamco Automatic Transmission, Inc.,* 536 S.W.2d 888 (Mo. App.1976).

**7.** This requirement of payment of transfer fee was removed from the Agreement by the Amendment of November 1, 1980 and relieved the assignee from paying any transfer fee or origination fee.

■ There is no evidence, nor does MSI claim, that at anytime Mr. Prado, or any other officer, agent or employee of J-Pral set foot in Missouri during negotiations for the assignment. There is no evidence of any communications between J-Pral and MSI in the period between November 1, 1980, and January 14, 1981, the date of the letter "rescinding" the assignment.

Over a period of time between November 1, 1980, and the date when this suit was instituted—a date not reflected in the record on appeal—J-Pral ordered and had delivered to it materials and inventory bearing MSI's trademark and logo and conducted the pharmacy in Clearwater, Florida, as an MSI pharmacy. However, there is no evidence whether these orders for pharmaceuticals were directed to MSI's offices in St. Louis, Missouri, or any other location in Missouri, nor whether they were filled in St. Louis or any place in the state of Missouri.

According to Mr. Hofmeister's affidavit J-Pral, in December, 1980, paid MSI the royalties due from the operation of the pharmacy in Florida. This was not denied by J-Pral. The Agreement requires the Licensee to pay monthly a License Fee of 2% of its gross receipts from the date the Licensee opens the pharmacy through the third month. Whether the payment of a single month's License Fee constitutes a significant contact with the state of Missouri for due process purposes is at best questionable. We have found no Missouri case holding it is. In *M & D Enterprises, Inc. v. Fournie,* supra, the Southern District held that where a Missouri corporation sought out a non-resident defendant for the sale of some building materials, the placing of a couple of telephone orders from Illinois to Missouri and agreeing to send payments for the materials purchased to the seller in Missouri were not sufficient minimum contacts for the Missouri court to exercise long-arm jurisdiction over the Illinois defendant. See also: *Iowa Electric Light & Power Co. v. Atlas Corp.,* 603 F.2d 1301, 1303 (CA8, 1979).

We hold that J-Pral did not have sufficient minimal contacts with the state of Missouri to be subjected to personal jurisdiction under the Missouri long-arm statute, § 506.500.1(2) in a cause of action arising out of the making of a contract within the state of Missouri.

The next grounds MSI alleges as a basis for jurisdiction in the Circuit Court of St. Louis County is that the Agreement provided for arbitration in Missouri and thereby gave Missouri courts jurisdiction to enforce the Agreement.

Section XII of the Agreement provides: "Any controversy or claim arising out of or relating to this Agreement, or its interpretation or enforcement, shall be submitted to arbitration in the City of County of St. Louis, Missouri, in accordance with the rules of the American Arbitration Association . . ."

MSI cites us no cases to support this position, but relies solely on § 435.430 RSMo. Our research has led us to a number of cases which have held that by agreeing to arbitrate in a designated state, disputes arising from a given transaction or relationship, the parties impliedly consent to the jurisdiction of courts in that state to enforce the arbitration agreement. *Victory Transport, Inc. v. Comisaria General de Abastecimientos y Transportes,* 336 F.2d 354, 364 (CA2, 1964), cert. denied 381 U.S. 934, 85 S.Ct. 1763, 14 L.Ed.2d 698 (1965); *Petrol Shipping Corp. v. Kingdom of Greece, Ministry of Commerce,* 360 F.2d 103, 107[4, 5] (CA2, 1966), cert. denied 385 U.S. 931, 87 S.Ct. 291, 17 L.Ed.2d 213 (1966); *Hamilton Life Insurance Company v. Republic National Life Insurance Company,* 408 F.2d 606, 613[12, 13] (CA2, 1969); *Lawn v. Franklin,* 328 F.Supp. 791, 794[5] (S.D.N.Y.1971); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos,* 553 F.2d 842, 845[3] (CA2, 1977); *Phillip Bros., Div. of Engelhard Minerals & Chemicals Corp. v. El Salto, S.A.,* 487 F.Supp. 91, 93[1] (S.D.N.Y.1980); *Frye & Horgan Corporation v. Superior Court,* 5 Cal.2d 401, 55 P.2d 203, 204[3] (1936). In most, if not all of these cases, there was a statutory provision for

enforcing arbitration agreements by the courts of those states.

In June, 1980, the General Assembly of Missouri enacted its version of the Uniform Arbitration Act. §§ 435.350–.470, Cum. Supp.1980. This Act did not become effective until August 13, 1980, and specifically provided that it applied only to arbitration agreements made subsequent to its effective date. § 435.445, Cum.Supp.1980. The General Assembly did not repeal the prior arbitration statutes, §§ 435.010–435.280 RSMo 1978, providing that an arbitration agreement was not a bar to a suit. There was no provision in the Act as it existed prior to the effective date of the new Act for enforcement of an agreement to arbitrate and Missouri courts would not enforce such agreements. *Tureman v. Altman,* 361 Mo. 1220, 1229, 239 S.W.2d 304, 309[3]; 26 A.L.R.2d 729, 739[4] (Banc 1951); *Jenks v. Jenks,* 385 S.W.2d 370, 375[8] (Mo.App. 1964); *Hill v. Seaboard Fire & Marine Ins. Co.,* 374 S.W.2d 606, 610[5] (Mo.App.1963).

█ The Lease Agreement under consideration here was entered into between MSI and Mr. Comitos in October, 1979, at a time when the courts of this state would not enforce agreements to arbitrate, and prior to the enactment of §§ 435.350–.470 Cum.Supp.1980. The Assignment and Amendment of License Agreement was adopted by the conduct of the parties sometime after November 1, 1980. J-Pral stood in the shoes of Mr. Comitos as assignee of the Agreement and therefore acquired Mr. Comitos' interest in the Agreement entered into prior to August 13, 1980. There is no contention that the Agreement between MSI and J-Pral was a novation—MSI agrees that it was an assignment. Therefore the agreement to arbitrate was unenforcible in the courts of Missouri.

The first amended petition of MSI is a petition to order J-Pral to arbitrate pursuant to Section XII of the Agreement. The injunction sought is temporary—"enjoining J-Pral during the pendency of the arbitration ..." from (1) operating the Licensed Pharmacy other than as a Medicine Shoppe Pharmacy; (2) displaying any signs, adver-

tisements on or at the site of the Licensed Pharmacy; and (3) representing to the public, or third parties, in any manner, that the Licensed Pharmacy is other than a Medicine Shoppe Pharmacy. It also prays for an Order enforcing the Arbitrator's Award as a final judgment of the Court.

We believe that the cases cited hereinabove wherein it is implied that the parties to an agreement to Arbitrate consent to the courts of the state wherein the arbitration shall be conducted are inapposite because those states had statutes authorizing not only a confirmation of the Arbitrator's Award but also authority to enforce the arbitration agreement.

We hold, therefore, there is no merit to MSI's argument that Section XII of the Lease Agreement implies that J-Pral consented to the jurisdiction of the Circuit Court of the City or County of St. Louis.

MSI also argues that jurisdiction in Missouri is proper because the Agreement provides that the Agreement is a Missouri contract. Section XV of the Agreement provides:

> This License Agreement shall be deemed for all purposes to have been made in the State of Missouri and shall be governed by and construed under and in accordance with the laws of the State of Missouri.

█ While there is authority for the proposition that one may agree to submit to personal jurisdiction of a given court in advance of litigation by so stipulating in a contract, *National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964), the provision relied upon by MSI is a choice of law provision and not a consent to jurisdiction clause. We reach this conclusion because the language in this provision in the Agreement is not sufficiently definite nor so unequivocal on the question of submission to the jurisdiction of Missouri courts, to constitute an effective waiver of the constitutional right of due process to be sued in a forum where in personam jurisdiction may clearly and properly be obtained in accordance with traditional notions of fair play and substantial

justice. *Telephonic, Inc. v. Rosenblum,* 88 N.M. 532, 543 P.2d 825, 830[5] (1975).

We hold, therefore, that J-Pral did not, by Section XV of the Agreement consent to jurisdiction in the Circuit Court of St. Louis County, Missouri.

 Finally, MSI contends that J-Pral is collaterally estopped from raising the issue of personal jurisdiction because that question had already been decided adversely to J-Pral in the arbitration proceedings. We hold that there is no merit to this argument because at the time the trial court entered its Order dismissing MSI's first amended petition there was no decision on the merits on this issue by the Arbitration Tribunal and for collateral estoppel to be applied there must be a decision on the merits. *Cooper v. Yellow Freight System, Inc.,* 589 S.W.2d 643, 645 (Mo.App.1979).

The judgment of the trial court dismissing MSI's first amended petition is affirmed.

PUDLOWSKI, P.J., and SMITH, J., concur.