Pete D. STAVRIDES,
Plaintiff/Appellant,

v.

Frank L. ZERJAV, Defendant,

and

Pinecrest Partners Ltd., Defendant,

and

Peoples Bank Of Bloomington,
Defendant/Respondent.

No. 62028.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 16, 1993.

Rehearing Denied March 17, 1993.

Robert D. Arb, Arb & Martin, Valley Park, for appellant.

Todd J. Aschbacher, St. Louis, William J. O'Herin, Florissant, for respondent.

CRANE, Judge.

Plaintiff appeals from the judgment of the trial court dismissing his cause of action against defendant, an Illinois bank, for lack of personal jurisdiction. We affirm on the grounds that plaintiff did not make a prima facie showing that defendant had committed a tortious act, made a contract, or transacted business in this state. Further, the trial court did not err in excluding an affidavit submitted by plaintiff on the day of the hearing.

Plaintiff, Pete D. Stavrides, a Missouri resident, filed suit against Peoples Bank of Bloomington, an Illinois corporation, and against Frank L. Zerjav and Pinecrest Partners Ltd., both Missouri residents, for damages resulting from a chain of events which occurred when Stavrides made his final payment on a promissory note to Pinecrest instead of to Peoples, which had become escrowee to receive the payments on the note. After Peoples filed a motion to dismiss for lack of personal jurisdiction, Stavrides obtained leave to file an amended petition. Peoples moved to dismiss the amended petition for lack of personal jurisdiction and attached a supporting affidavit and exhibits. Stavrides filed an affidavit in opposition to the motion on the day of the hearing. After the hearing the trial court granted Peoples' motions objecting to the affidavit and to dismiss. The trial court found no just reason for delay and entered judgment against Stavrides and in favor of Peoples under Mo.R.Civ.P. 74.01(b). Stavrides appeals from this judgment.

## FACTUAL BACKGROUND

The facts before the trial court at the time of its ruling on the motion to dismiss are found in the amended petition and the exhibits incorporated therein and in the affidavit and exhibits filed in support of the motion to dismiss. The amended petition and the attached exhibits disclose that in 1983 Stavrides executed a series of promissory notes with various maturity dates to Pinecrest in connection with Stavrides' purchase of a share in Pinecrest, a limited partnership in which defendant Frank L. Zerjav was general partner. The final payment of $16,920.00 was due before March 1, 1987. At the time Stavrides executed the promissory notes, he signed an Indemnification and Pledge Agreement with Integrity Insurance Company, as surety, in consideration of its issuance of an Investor Financial Surety Bond. The indemnity agreement provided that if Integrity incurred a loss under its bond as a result of Stavrides' default on his payments on the promissory notes, Stavrides would indemnify Integrity, whether or not Stavrides had any defenses under the note or otherwise against the partnership, general partner, lender or any other party.

On January 15, 1985 Peoples wrote to Stavrides advising him that his note for capital contribution to Pinecrest had been assigned to Peoples as Trustee and his payments beginning March 1, 1985 should be sent to Peoples. It further advised, "In the event you have any questions, please don't hesitate to contact the General Partner of the Partnership." On February 10, 1987 Zerjav wrote Stavrides and advised him that his final capital contribution of $16,920.00 should be forwarded to arrive no later than March 1, 1987, and enclosed a self-addressed envelope. Stavrides alleges he mailed checks in the amount of $16,920.00 to Zerjav at Pinecrest's St. Louis County address. Zerjav endorsed the checks as general partner and paid them to "RVML Project 5100." Zerjav sent a memorandum to Stavrides which acknowledged

receipt of the payment and advised him to disregard a notice that had been sent from "a third party lender" that a further payment was owed. The memorandum further advised that an escrow agent was required to submit unpaid notes to the surety bonding carrier but that "such amounts" would exceed any amount determined collectible by the escrowee.

On January 27, 1989 Integrity Insurance in Liquidation in New Jersey advised Stavrides by mail that Peoples had never received his 1987 payment of $16,920.00, that Peoples had filed a surety claim with the State of New Jersey as liquidator of Integrity, and that Stavrides would be liable under his Indemnification and Pledge Agreement with Integrity to reimburse Integrity for all liability incurred as a result of Stavrides' nonpayment. The New Jersey Commissioner of Insurance subsequently filed suit against Stavrides, which Stavrides settled in the amount of $16,920.00.

Stavrides' claims against Peoples are stated in Counts IV–VII of the amended petition. In Count IV Stavrides seeks damages for fraudulent misrepresentation arising out of Peoples' representation in its surety claim to the State of New Jersey that Stavrides had defaulted on his 1987 payment. In Count V Stavrides seeks damages for breach of contract contending that Peoples as "assignee" of the promissory note, violated the promissory note contract by declaring a breach for nonpayment when he had made payment. In Count VI Stavrides seeks damages for "breach of duty of good faith" as a result of Peoples' declaration and representation that Stavrides had not made the payment without first making inquiry of Stavrides. In Count VII Stavrides sought damages for fraudulent misrepresentation arising out of Peoples' representation in its surety claim that Stavrides had defaulted on payment, alleging alternative facts to Count IV.

Stavrides further alleges that Peoples was subject to Missouri jurisdiction under its long arm statute as assignee of the notes which were made in Missouri and because its letter of February 15 advising Stavrides to contact Zerjav if he had any questions was a creation of agency by which Peoples contracted and transacted business in Missouri. He also alleges that Missouri courts had jurisdiction with respect to the misrepresentation and "breach of good faith" claims because Stavrides was harmed in Missouri by this out-of-state conduct.

Peoples moved to dismiss Counts IV–VII under Mo.R.Civ.P. 55.27(a)(2) for lack of personal jurisdiction on the grounds it had no minimum contacts with the State of Missouri and had not performed the necessary acts in Missouri to subject itself to jurisdiction under the long arm statute. Peoples attached to its motion a copy of the Escrow Agreement and the affidavit of Owen J. Mair, Senior Vice President–Trust of Peoples, which incorporated the Escrow Agreement. The Escrow Agreement was between Pinecrest Associates, Limited (Pinecrest Associates)[1], Ralph and Elsa Endress (Endress), Bloomington Federal Savings & Loan Association (lender) and Peoples. It recited that Pinecrest Associates was indebted to Endress in the amount of $528,000.00 and had agreed to assign partner capital notes in that aggregate amount to Endress in a manner so as to afford Endress the opportunity to secure bonding of the notes for hypothecation purposes. It also recited that lender had advanced Endress money in reliance on Pinecrest's agreement, that Integrity Insurance Company had issued a surety bond guaranteeing payment of the notes and that Integrity had requested that the notes be transferred to an escrowee to receive payments on the notes. It further recited that Peoples had agreed to receive the notes and collect payments thereon as escrowee without any obligation to enforce payment thereon. The notes were for payments due on March 1, 1985, March 1, 1986, and March 1, 1987.

Under the terms of the agreement, Pinecrest Associates agreed to notify the obligors of the notes to make all payments to Peoples. Peoples agreed to pay out such sums as were collected without obligation

---

1. This is a different entity from the defendant Pinecrest.

to enforce collection. Peoples also agreed that, in the event an obligor failed to pay, Peoples would notify the surety and the other parties to the Escrow Agreement and send all defaulted notes to the surety. The address of Pinecrest Associates was listed in the Agreement as "c/o Frank Zerjav" in St. Louis County, Missouri. Someone other than Zerjav signed the agreement on behalf of Pinecrest Associates. The record does not further disclose the relationship between Pinecrest Associates and Pinecrest or how Pinecrest Associates obtained the notes, but this information is not necessary to resolve the issues raised in this appeal.

Mair's affidavit, made on personal knowledge, recited that Peoples, at the time of the acts complained of and at the time of the affidavit, 1) was an Illinois corporation with its principal place of business in Bloomington, Illinois; 2) was not authorized to do business in Missouri; 3) did not have an office in Missouri; 4) did not own any real estate in Missouri; and 5) did not have any agent for service of process or otherwise in Missouri. He further averred that, during the time covered by the petition, Peoples conducted no business in Missouri and no agent of Peoples entered Missouri to perform any acts mentioned in the petition. He also attested that Peoples was solicited to enter into the Escrow Agreement; that all parties to the Agreement were non-Missouri residents except for Pinecrest Associates; that all of the negotiations connected with the Agreement took place outside Missouri; and that the Agreement was executed in Bloomington, Illinois.

## LONG ARM JURISDICTION

 Stavrides' first two points relate to asserted trial court error in sustaining Peoples' motion to dismiss for lack of personal jurisdiction. When a defendant raises the issue of lack of personal jurisdiction in a motion to dismiss, the plaintiff has the burden of making a prima facie showing that the trial court has personal jurisdiction over defendant. The plaintiff must show that the defendant engaged in one of the acts listed in Missouri's long arm statute and that sufficient minimum contacts with

Missouri exist to justify the exercise of jurisdiction. *Medicine Shoppe Int'l v. J-Pral Corp.*, 662 S.W.2d 263, 268, 271 (Mo. App.1983). When the motion is based on facts not appearing of record, the trial court may hear the matter on affidavits presented by the respective parties. *Id.* at 268; Mo.R.Civ.P. 55.28. Where affidavits are offered in support of a motion to dismiss for lack of jurisdiction, the trial court may believe or disbelieve the statements contained in the affidavits. *Medicine Shoppe*, 662 S.W.2d at 268.

 The determination of the jurisdictional issue is for the trial court " 'in the first instance.' " *Health Related Serv. v. Golden Plains Convalescent Center*, 705 S.W.2d 499, 503 (Mo.App.1985) (quoting *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 893 (Mo. banc 1970)). But the sufficiency of the evidence to make a prima facie showing that the trial court may exercise personal jurisdiction is a question of law, *id.*, which we review independently on appeal. *City of Cabool v. Mo. State Bd. of Mediation*, 689 S.W.2d 51, 54 (Mo. banc 1985).

### Tortious Act

For his first point Stavrides contends the trial court erred in dismissing the petition against Peoples for lack of personal jurisdiction because People's representation to the surety company that Stavrides had not paid his promissory note damaged Stavrides in Missouri. Stavrides alleges fraudulent misrepresentation in Counts IV and VII.

 The Missouri long arm statute extends personal jurisdiction over a foreign firm on any cause of action arising from the "commission of a tortious act within this state." § 506.500.1(3) RSMo 1986. A party seeking to invoke long arm jurisdiction based on a defendant having committed a tort within Missouri must make a prima facie showing of the validity of his tort claim. *State ex rel. William Ranni Assoc. v. Hartenbach*, 742 S.W.2d 134, 139 (Mo. banc 1987). To state a claim of fraud-

ulent misrepresentation, a plaintiff must plead:

 (1) a false, material representation;

 (2) the speaker's knowledge of its falsity or his ignorance of its truth;

 (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated;

 (4) the hearer's ignorance of the falsity of the representation;

 (5) the hearer's reliance on its truth;

 (6) the hearer's right to rely thereon; and

 (7) the hearer's consequent and proximately caused injury.

*Heberer v. Shell Oil Co.,* 744 S.W.2d 441, 443 (Mo. banc 1988); *see also* MAI 23.05 [1981 Revision] (word "plaintiff" used instead of "hearer").

■ Stavrides' petition fails to allege a cause of action based on these elements. He alleges that Peoples "fraudulently misrepresented" the default to the State of New Jersey, that Peoples intended that the State of New Jersey rely on it, that the State of New Jersey did rely on it, and that as a direct result Stavrides was damaged because the State of New Jersey sued him for defaulting on the note and recovered the full amount from him. He does not allege a fraudulent misrepresentation was made to and relied upon by him which caused him injury. Without such averments, he fails to invoke principles of substantive law which might entitle him to relief. Having failed to state a cause of action for fraudulent misrepresentation, Stavrides has accordingly made no prima facie showing of the validity of his fraud claim and thus cannot invoke long arm jurisdiction based on Peoples having committed a tortious act within Missouri. Point one is denied.

*Making a Contract and Transaction of Business*

For his second point Stavrides asserts that the trial court erred in dismissing the petition for lack of personal jurisdiction because "the purported assignment of the promissory note in question put Peoples Bank in the shoes of Pinecrest Partners who was subject to Missouri jurisdiction." Stavrides claims jurisdiction on the basis of the transaction of business and the making of a contract clauses of the long arm statute. Subsections (1) and (2) of § 506.500.1 provide that a corporation that transacts business or makes a contract in Missouri is subject to the jurisdiction of Missouri courts as to any cause of action arising from the commission of those acts. Count V alleges breach of contract by Peoples based on an alleged breach of the promissory note.

■ Peoples was not a party to the promissory note; Stavrides claims Peoples was an "assignee" of the promissory note and as such stood in the shoes of the original party as the maker of a contract in Missouri. An assignee of a Missouri contract, who agrees to assume, perform, and comply with all the terms of a contract as if it had been an original party, stands in the shoes of that original party as maker of a Missouri contract. *Medicine Shoppe,* 662 S.W.2d at 272. This is because an assignment "divests the assignor of all interest in the thing assigned, and vests the same in the assignee." *Farmers Ins. Co. v. Effertz,* 795 S.W.2d 424, 426 (Mo.App. 1990).

In this case, no such assignment was demonstrated. Although the word "assign" was used by the parties, the transaction shown by the exhibits was not the assignment to Peoples of all interest in the note. The Escrow Agreement provided that Peoples was to be "Escrowee." Under this Agreement Peoples agreed solely to hold the note in safekeeping, receive all payments, disburse them as required to the lender or to Pinecrest, give notice of any defaulted payments, and forward to the surety or Pinecrest any defaulted notes. The Escrow Agreement did not give Peoples any other interest in the note or any right to enforce or collect the note. By entering into the Escrow Agreement, Peoples did not become a "maker" of the promissory note and did not thus subject itself to Missouri's Long Arm Statute.

■ Stavrides next argues that Peoples transacted business in this state because it took an "assignment" of the Missouri promissory note and because it made Zerjav its "agent" in the state. We disagree. Peoples did not take an assignment of the note, nor did it make Zerjav its agent and transact business in Missouri through him.

As we have previously set forth, Peoples was not an assignee of the promissory note. It held the note as escrowee. There was no showing that Peoples transacted business in Missouri by virtue of its escrow of the Missouri promissory note. The uncontroverted facts set forth in the Mair affidavit establish that Peoples is an Illinois corporation with its principal place of business in Illinois. It was not authorized to do business in Missouri, it had no office, real estate, or resident agent in Missouri. It was solicited to enter into the Escrow Agreement in Illinois. All negotiations connected with the Agreement took place outside of Missouri and the Agreement was executed in Bloomington, Illinois. Peoples' obligations under the Agreement were limited to receiving the notes, collecting the payments, and remitting them to the lender. There is no contention that any of these acts took place in Missouri.

It appears from the record that the only act Peoples took in relation to this note which had any connection with Missouri was mailing a letter to Stavrides in Missouri advising him that he should send his payments to Peoples. This use of the mail does not constitute transacting business in Missouri. *State ex rel. Bank of Gering v. Schoenlaub*, 540 S.W.2d 31, 35 (Mo. banc 1976). Under these circumstances, Peoples' escrow of a Missouri promissory note in Illinois did not constitute the transaction of business in Missouri for the purposes of long arm jurisdiction.

■ Alternatively, the exercise of personal jurisdiction over Peoples as escrowee of the promissory note would not comport with the requirements of due process. Due process requires that in order to subject an out-of-state defendant to personal jurisdiction, the defendant must have certain minimum contacts with the forum so that the maintenance of the suit does not offend the traditional notions of fair

play and substantial justice. *Ranni*, 742 S.W.2d at 137. It is essential that defendant take some act by which it " 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.' " *Id.* at 137–38 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958)).

In this case Peoples did not purposefully avail itself of the benefits and protections of the laws of Missouri. The promissory note was given to Peoples, an Illinois bank, to be held by it in Illinois pursuant to an Escrow Agreement made in Illinois to secure a loan made by another Illinois bank to Illinois residents. Peoples had no power to collect or enforce the note. That the note had been made in Missouri was random and fortuitous. *Id.* at 139. Because the maker of the note could conceivably suffer a financial loss as a result of Peoples' out-of-state activities does not make Peoples amenable to the courts of this state. *Id.* at 139. The use of the interstate mail to advise Stavrides that he should send payments to Peoples is an insufficient contact to satisfy the minimum contacts requirement necessary to comply with due process in the assertion of long arm jurisdiction. *Gering*, 540 S.W.2d at 35; *TSE Supply Co. v. Cumberland Natural Gas Co.*, 648 S.W.2d 169, 170 (Mo.App. 1983).

■ Stavrides further argues that in its letter Peoples made Zerjav its agent by "cloaking" him with authority to inform Stavrides where the promissory note payments should be sent. An examination of Peoples' letter does not support this conclusion. The letter unequivocally advised Stavrides the payments were to be sent to Peoples, in care of Mair. After so directing, the letter stated, "In the event you have any questions, please don't hesitate to contact the General Partner of the Partnership." Assuming for the purposes of this opinion that the general partner of Pinecrest Associates was Zerjav, this suggestion does not confer apparent authority on Zerjav to be Peoples' agent. One of the essential characteristics of an agency relationship is that the agent or apparent agent hold a power to alter the legal relations

between the principal and third persons and between the principal and himself. Restatement (Second) of Agency § 12 (1957); *see also* 3 Am.Jur.2d Agency § 2 (1986). Peoples' suggestion that Stavrides contact Zerjav with any questions did not give Zerjav any power to alter the legal relations between Peoples and third persons. Zerjav did not become an agent or apparent agent of Peoples. The letter creates no basis for Missouri to obtain jurisdiction over Peoples for any of Zerjav's transactions in Missouri.

Stavrides failed to make a prima facie showing that Peoples either entered into a contract in this state or transacted business in this state. Alternatively, Stavrides failed to justify the exercise of jurisdiction on the basis of sufficient minimum contacts. Point two is denied.

## EXCLUSION OF ZERJAV AFFIDAVIT

For his third point Stavrides asserts that the trial court erred in sustaining Peoples' objection to consideration of the affidavit of Frank Zerjav on the motion to dismiss. The affidavit was filed on March 31, 1992, the day of the hearing on the motion. The motion had been pending since January 13, 1992. Peoples objected to the affidavit on the grounds it had not been previously presented to Peoples' counsel. The court sustained the objection, citing St. Louis County Local Rule 33.2. Stavrides correctly argues that this local rule does not address time limits for filing affidavits prior to a motion hearing. However, Mo.R.Civ.P. 44.01(d) requires that opposing affidavits "be served not later than one day before the hearing, unless the trial court permits them to be served at some other time." The trial court did not err in sustaining Peoples' objection to an affidavit filed on the day of the motion hearing.

The judgment of the trial court is affirmed.

CARL R. GAERTNER, P.J., and CRAHAN, J., concur.