**Lucille WILLIAMS, Appellant,**

v.

**SOUTHERN UNION COMPANY, et al., Respondent.**

**No. WD 73013.**

Missouri Court of Appeals, Western District.

Nov. 15, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 20, 2011.

Application for Transfer Denied Jan. 31, 2012.

David Bony, Kansas City, MO, for Appellant.

Truman Eldridge, Jr., Kansas City, MO, for Respondent.

Before ALOK AHUJA, P.J., THOMAS H. NEWTON, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

Lucille Williams appeals the circuit court's judgment dismissing her petition against Southern Union Company d/b/a Missouri Gas Energy (MGE) and Jeffery Harris, an employee of MGE, for malicious prosecution, outrageous conduct—fraud, and intentional wrongful interference with utility service. The circuit court found that Williams's claim for malicious prosecution was barred by the statute of limitations and was not saved under Missouri's one year savings statute and that Williams's claims for outrageous conduct—fraud and intentional wrongful interference with utility service were barred by collateral estoppel. Williams disagrees. She contends that the circuit court should not have dismissed her malicious prosecution claim because Missouri's savings statute was not triggered by the striking of her pleadings in her first suit against MGE and Harris. Further, she asserts that the circuit court erred in dismissing her claims for outrageous conduct—fraud and intentional wrongful interference with utility service due to collateral estoppel. In particular, Williams asserts that collateral estoppel does not apply because (1) there was not a final judgment in the prior adjudication on the same issues, (2) MGE's Tariff Number 8 permitted Williams to file a lawsuit without first exhausting her administrative remedies, and (3) Williams did not have a full and fair opportunity to

litigate the issues in the prior lawsuit. We affirm in part and reverse and remand in part.

Jeffery Harris was an employee of MGE and was responsible for inspecting suspected diversions of natural gas service. Williams was a resident of Jackson County, Missouri. On December 31, 2003, Harris discovered what appeared to be an unauthorized natural gas meter hooked up to Williams's apartment. He reported the unauthorized meter and suspected diversion of gas service to the Kansas City Police Department. The police investigated the incident and issued Williams a municipal court citation for violating Kansas City Municipal Code 50–120 (diversion of utility service). The municipal division of the circuit court held a trial on the citation on April 27, 2004. Williams was found not guilty.

On December 9, 2005, almost two years after Harris reported to the police that MGE suspected that Williams was diverting gas service, Williams, through her daughter Sharon Crutchfield, filed an informal complaint with the Missouri Public Service Commission ("PSC"). Williams alleged that MGE was wrongfully billing her and refusing to turn on natural gas service for her residence. MGE participated in the informal complaint process and attempted to resolve all issues with Williams. On December 28, 2005, the informal complaint was closed. Williams never filed a formal complaint with the PSC.

On April 26, 2006, Williams filed suit against MGE and Harris in the Circuit Court of Jackson County, Case No. 0616–CV11683 (First Suit). In the petition, Williams asserted claims for trespass and malicious prosecution. On December 18, 2006, when Williams's counsel failed to appear at a hearing intended to resolve a pending discovery dispute, the circuit court ordered that Williams's pleadings be stricken. The circuit court's order stated: "Since plaintiff did not appear as scheduled, albeit on short notice, it would appear there is no intention to pursue this case. Therefore, the plaintiff's pleadings are ordered STRICKEN."

Almost one year later, on December 13, 2007, Williams filed her second petition against MGE and Harris in the Circuit Court of Jackson County, Case No. 0716–CV36305 (the Second Suit). The petition in the Second Suit asserted claims for trespass and malicious prosecution, which were identical to the claims asserted in the First Suit. On July 18, 2008, Williams amended her petition to include the additional counts of outrageous conduct—fraud (Count III) and intentional wrongful interference with utility service (Count IV).

On March 11, 2009, MGE and Harris filed a motion to dismiss the Second Suit for lack of subject matter jurisdiction and primary jurisdiction because Williams had failed to exhaust her administrative remedies before the PSC. On March 16, 2009, the circuit court held a hearing on the motion and granted MGE's and Harris's motion with respect to Williams's claims for outrageous conduct—fraud (Counts III) and intentional wrongful interference with utility service (Count IV). In granting the motion to dismiss for these two counts, the court said at the hearing:

> Just so there is a record on that, it is the Court's belief that Count III [outrageous conduct—fraud] and Count IV [intentional wrongful interference with utility service] both come within the administrative responsibilities of the Public Service Commission and those are properly first raised there and there has been no exhaustion of administrative remedies and it is premature to bring any claims based on that in this case.

The circuit court denied the motion with respect to Count I (trespass) and Count II

(malicious prosecution). On March 17, 2009, the circuit court entered its written order denying the motion to dismiss as to Counts I and II and granting the motion to dismiss as to Counts III and IV. On March 20, 2009, Williams voluntarily dismissed the entire action without prejudice following the circuit court's adverse order.

Williams filed her third petition against MGE and Harris on March 19, 2010 ("Third Suit"). The petition contained claims for malicious prosecution (Count I), outrageous conduct—fraud (Count II), and intentional wrongful interference with utility service (Count III). The language of these counts was identical to Williams's First Amended Petition in the Second Suit. The only difference between the petition in the Third Suit and Williams's First Amended Petition in the Second Suit is that she dropped her trespass claim.

On July 17, 2009, MGE and Harris filed a motion for sanctions requesting that the circuit court dismiss Williams's petition in the Third Suit with prejudice. On August 26, 2010, the circuit court entered an Order dismissing with prejudice Williams's petition in the Third Suit. The circuit court found that Williams's action for malicious prosecution was barred by the statute of limitations and was not saved under Missouri's one year savings statute. Further, the circuit court found that Williams's claims for outrageous conduct—fraud and intentional wrongful interference with utility service were barred by collateral estoppel. The circuit court's order was later designated as a final judgment on January 20, 2011, when the circuit court issued its Amended Order and Judgment. As part of this final judgment, the circuit court ordered Rule 55.03 sanctions in the amount of $1,665.00 against Williams and

her attorney for "bringing an action for the 'improper purpose' of harassing the [MGE and Harris] and causing the needless increase in the cost of [MGE's and Harris's] litigation."[1] Williams appeals.

In her first point on appeal, Williams asserts that the circuit court erred in dismissing her malicious prosecution count because Missouri's savings statute was not triggered by the striking of her pleadings in her first suit against MGE and Harris. We disagree.

█ The statute of limitations for malicious prosecution in Missouri is two years. § 516.140, RSMo 2000. In malicious prosecution cases, this two-year statute accrues upon the termination of the allegedly malicious action in favor of the plaintiff. *Arana v. Reed*, 793 S.W.2d 224, 226 (Mo.App.1990). Missouri statutes further include a one-year savings statute for actions which suffer a nonsuit. § 516.230, RSMo 2000. A plaintiff, however, may receive the benefit of this savings statute only once. *Heintz v. Swimmer*, 922 S.W.2d 772, 776 (Mo.App.1996); *Britton v. Hamilton*, 740 S.W.2d 704, 705 (Mo.App. 1987).

Williams's malicious prosecution claim accrued when the municipal division of the circuit court found her not guilty on April 27, 2004. Williams filed the First Suit against MGE and Harris on April 26, 2006. The First Suit included a claim for malicious prosecution as Count I. On December 18, 2006, when Williams's counsel failed to appear at hearing to resolve a pending discovery dispute, the circuit court ordered that Williams's pleadings be stricken.

Williams filed the Second Suit against MGE and Harris on December 13, 2007.

---

1. Williams does not appeal from the circuit court's judgment ordering the payment of sanctions.

The petition in the Second Suit also contained a claim for malicious prosecution. The Second Suit was filed after the two-year statute of limitations had run for a malicious prosecution action, but section 516.230 says that "[i]f any action shall have been commenced within the times respectively prescribed in section 516.010 to 516.370, and the plaintiff therein suffer a nonsuit, . . . such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered[.]" The issue is whether the circuit court's striking of Williams' pleadings in the First Suit amounted to a nonsuit. We find that it does.

"Generally, a nonsuit occurs when a court order terminates a cause of action without prejudice." *Rickner v. Golfinopoulos*, 271 S.W.3d 32, 34 (Mo.App. 2008). " 'The taking of a nonsuit amounts to, and has the effect of, a dismissal of the case as to one or all the defendants. It is not a final disposition of the cause of action on the merits, but is a final termination of the particular suit.' " *Rainwater v. Wallace*, 351 Mo. 1044, 174 S.W.2d 835, 838 (1943) (citations omitted). " '[I]t has practically been held that the word "nonsuit" . . . means any judgment or discontinuance or dismissal whereby the merits are left untouched[.]' " *Turner v. Mo.–Ks.–Tx. R. Co.*, 346 Mo. 28, 142 S.W.2d 455, 459 (1940) (quoting *Wetmore v. Crouch*, 188 Mo. 647, 87 S.W. 954, 955 (1905)). Thus, "a judgment of nonsuit and a judgment of dismissal serve the same purpose, have the same legal effect, and arrive at the same end, and hence should be treated alike and allowed the same office in the everyday administration of the law." *Wetmore*, 87 S.W. at 956.

On December 18, 2006, when Williams's counsel failed to appear at hearing to resolve a pending discovery dispute, the circuit court ordered that Williams's pleadings be stricken. The circuit court's order stated: "Since plaintiff did not appear as scheduled, albeit on short notice, it would appear there is no intention to pursue this case. Therefore, the plaintiff's pleadings are ordered STRICKEN." The docket entry on Missouri Case.net reflects that the case was dismissed by the court without prejudice. "A civil action is commenced by filing a petition[.]" Rule 53.01. Rule 55.01 requires that in every case "[t]here shall be a petition[.]" The striking of a plaintiff's pleadings was clearly a discontinuance of the lawsuit.[2] The circuit court's striking of Williams's pleadings in the First Suit, therefore, amounted to a nonsuit.[3]

Thus, under Missouri's savings statute, section 516.230, Williams was allowed to "commence a new action . . . within one year after such nonsuit suffered[.]" This she did when, on December 13, 2007, she filed the second suit against MGE and Harris, which also contained a claim for malicious prosecution. Williams, however, voluntarily dismissed her claims in the Second Suit, including her claim for malicious prosecution, on March 20, 2009. Therefore, on March 19, 2010, when Williams filed her Third Suit against MGE

---

**2.** Indeed, Williams thought it was a discontinuance of the lawsuit as evidenced by her filing a new petition under a new case number in the Second Suit. Williams did nothing to further prosecute the First Suit.

**3.** To the extent that Williams contends that she did not suffer a nonsuit because the circuit court never issued a "judgment," her contention is without merit. The savings statute is triggered by a nonsuit not a final judgment. Indeed, "under Rule 67.02 a 'voluntary dismissal' constitutes a nonsuit because it allows a plaintiff to dismiss a civil action without prejudice and 'without order of the court' any time prior to the introduction of evidence at trial." *Rickner*, 271 S.W.3d at 34.

and Harris, which again included a claim for malicious prosecution, the Third Suit on this claim was filed outside the two-year statute of limitations for malicious prosecution, and the savings statute was inapplicable. Although the Third Suit was filed within one year of Williams's voluntary dismissal of her claims in the Second Suit, Williams could not use the savings statute to "save" her malicious prosecution claim because the savings statute could only be used once and she had already used the savings statute to save her claim for malicious prosecution when she filed the Second Suit. *Heintz*, 922 S.W.2d at 776; *Britton*, 740 S.W.2d at 705. Thus, the circuit court properly dismissed Williams's claim for malicious prosecution in the Third Suit because the statute of limitations had expired.

In her second, third, and fourth point, Williams contends that the circuit court erred in granting MGE's and Harris's motion to dismiss her claims for outrageous conduct—fraud and intentional wrongful interference with utility service due to collateral estoppel. In particular, Williams asserts that collateral estoppel does not apply because (1) there was not a final judgment in the prior adjudication on the same issues, (2) MGE's Tariff Number 8 permitted Williams to file a lawsuit without first exhausting her administrative remedies, and (3) Williams did not have a full and fair opportunity to litigate the issues in the prior lawsuit. We agree with Williams that collateral estoppel does not apply in regard to her claims for outrageous conduct—fraud and intentional wrongful interference with utility service.

■ "Collateral estoppel involves the determination of an issue of ultimate fact by a valid and final judgment." *State v. Dowell*, 311 S.W.3d 832, 837 (Mo.App. 2010). In determining whether collateral

estoppel applies, courts should consider whether:

> (1) the issue decided in the first action must be identical to the issue in the second action; (2) the prior litigation must have resulted in a final judgment on the merits; (3) the party to be estopped must have been a party or in privity with a party to the prior adjudication; and (4) that party must have had a full and fair opportunity to litigate the issue in the prior suit.

*Fischer ex rel. Scarborough v. Fischer*, 34 S.W.3d 263, 265 (Mo.App.2000).

The circuit court in the Third Suit dismissed Williams's claims for outrageous conduct—fraud and intentional wrongful interference with utility service in the Third Suit because it determined that all the elements for collateral estoppel had been established. In regard to whether the dismissal of Williams's claims for outrageous conduct—fraud and intentional wrongful interference with utility service resulted in a "final judgment on the merits" in the Second Suit, the circuit court in the Third Suit said:

> [B]ecause on March 19, 2009, Judge Nixon granted Defendant's Motion to Dismiss the previous suit due to primary jurisdiction for [the claims for outrageous conduct—fraud and intentional wrongful interference with utility service] being vested with the Missouri Public Service Commission and because a Court's decision on jurisdiction is considered a judgment on the merits for that particular issue, Judge Nixon's earlier determination of primary jurisdiction is considered a judgment on the merits for the issue of primary jurisdiction[.]

The circuit court in the Third Suit, however, failed to recognize that, after the circuit court in the Second Suit had dismissed Williams's claims for outrageous

conduct—fraud and intentional wrongful interference with utility service, Williams voluntarily dismissed her entire action pursuant to Rule 67.02(a). Rule 67.02(a) provides in pertinent part:

> Except as provided in Rule 52, a civil action may be dismissed by the plaintiff without order of the court anytime . . . (1) Prior to the swearing of the jury panel for voir dire examination, or (2) In cases tried without a jury, prior to the introduction of evidence at the trial."

In the instant case, after the circuit court in the Second Suit granted MGE's and Harris's motion to dismiss the counts for outrageous conduct—fraud and intentional wrongful interference with utility service, Williams filed her voluntary dismissal without prejudice. In the voluntary dismissal, counsel for Williams stated:

> COMES NOW Plaintiff and pursuant to Missouri Supreme Court Civil Procedure Rules 67.01 and 67.02(a) and *dismisses the above styled matter without prejudice.*
>
> . . . .
>
> Plaintiff is *compelled to dismiss her action without prejudice* for the reasons that defendants . . . filed a Motion to Dismiss Plaintiff's First Amended Petition for lack of subject matter jurisdiction on or about the 11th of March 2009.
>
> Defendants' motion was sustained by the Court on March 16th 2009 as to plaintiff's counts 3 and 4, for the reason that plaintiff had failured [sic] to exhaust her administrative remedies be-

fore the Missouri Public Service Commission with regards to defendant Southern Union Company's bill for removal of a gas meter from the apartment building in which plaintiff resided and for gas defendants alleged plaintiff stole; leaving plaintiff with insufficient time to exhaust her administrative remedies prior to the trial of this matter on the 23rd of March 2009.[4]

(Amended L.F. 152–153). The language of Williams's voluntary dismissal "leaves no doubt as to [her] intent to 'dismiss this action without prejudice.' There is no mention of specific individual counts or claims, only the action as a whole." *State ex rel. Frets v. Moore,* 291 S.W.3d 805, 812 (Mo.App.2009). Thus, Williams's voluntary dismissal was to the action as a whole.

▪ In explaining the effect of such a voluntary dismissal of an entire action, the *Frets* court said:

> "A voluntary dismissal is effective on the date it is filed with the court." Moreover, once a case has been dismissed under Rule 67.02, "it is as if the suit were never brought." Consequently, a trial court loses jurisdiction to enter any subsequent orders regarding the dismissed action. No appeal can be taken from the dismissal. "The circuit court may take no further steps as to the dismissed action, and any step attempted is viewed a nullity."

*Id.* (citations omitted); *see also State ex rel. Fortner v. Rolf,* 183 S.W.3d 249, 251–52 (Mo.App.2005).[5] Thus, after Williams

---

4.  We added the emphasis.

5.  *Cf. Stewart v. Liberty Mut. Fire Ins. Co.,* 349 S.W.3d 381 (Mo.App.2011) (a previously entered partial summary judgment on one count became a final judgment when the plaintiff voluntarily dismissed his remaining counts against Liberty Mutual). Thus, a plaintiff, who suffers an adverse ruling on one claim, can voluntarily dismiss his or her *remaining* claims in order to make the adverse ruling on the first claim appealable. Therefore, in determining the preclusive effect of a voluntary dismissal, courts must examine whether the voluntary dismissal was of the entire action following the court's adverse ruling or whether the voluntary dismissal was of the remaining claims following the court's adverse ruling.

voluntarily dismissed the entire action, there was nothing left to appeal, and it was as if the suit had never been brought. *Id.* Thus, the voluntary dismissal wiped the slate clean and allowed Williams to avoid any preclusive effect the dismissal of her claims for outrageous conduct—fraud and intentional wrongful interference with utility service in the Second Suit might otherwise have had.

The circuit court in the Third Suit, therefore, erred in granting MGE's and Harris's motion to dismiss her claims for outrageous conduct—fraud and intentional wrongful interference with utility service due to collateral estoppel. Because the prior litigation in the Second Suit did not result in a final judgment on the merits, collateral estoppel does not apply.[6]

We, therefore, affirm the circuit court's judgment dismissing Williams's claim for malicious prosecution in the Third Suit because the statute of limitations had expired. We reverse the circuit court's judgment in the Third Suit granting MGE's and Harris's motion to dismiss Williams's claims for outrageous conduct—fraud and intentional wrongful interference with utility service due to collateral estoppel and remand for further proceedings.

All concur.

---

**6.** Because we reach this conclusion, it is unnecessary for us to address Williams's additional arguments that collateral estoppel does not apply because MGE's Tariff Number 8 permitted Williams to file a lawsuit without first exhausting her administrative remedies and because Williams did not have a full and fair opportunity to litigate the issues in the prior lawsuit.