

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| STEVEN PINKERTON, | ) | |
| | ) | |
| Respondent, | ) | WD83594 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | November 24, 2020 |
| TECHNICAL EDUCATION | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Patrick W. Campbell, Judge

Before Division Four:  Cynthia L. Martin, Chief Judge, Presiding, Karen King Mitchell, Judge and Anthony Rex Gabbert, Judge

Technical Education Services Inc., an affiliate of Aviation Institute of Maintenance, et al., ("AIM"), appeals the trial court's order denying AIM's motion to dismiss, or in the alternative, to compel arbitration.[1]  AIM asserts three points on appeal challenging the trial court's determination that AIM is collaterally estopped from seeking to compel arbitration.  We affirm the trial court's order.

---

[1]An order denying a motion to compel arbitration is appealable under section 435.440.

**Factual and Procedural Background**

AIM, a Virginia-based corporation, operates aviation maintenance trade schools throughout the United States, one of which is located in Kansas City, Missouri. In 2009, Steven Pinkerton ("Pinkerton") enrolled at AIM's Kansas City, Missouri trade school. In doing so, he signed an enrollment agreement which included an arbitration provision that provided as follows:

> **Arbitration Agreement:** I agree that any controversy, claim or dispute of any sort arising out of or relating to matters including, but not limited to: student admission, enrollment, financial obligations and status as a student, which cannot be first resolved by way of applicable internal dispute resolution practices and procedures, shall be submitted for arbitration, to be administered by the American Arbitration Association located within Virginia Beach, Virginia, in accordance with its commercial arbitration rules. All fees and expenses of arbitration shall be shared equally and any award rendered in favor of a student will be limited to the total amount paid to the School by the student. Any award or determination rendered by the arbitrator(s) shall be final and entered as a judgment by a court of competent jurisdiction.

Six months later, Pinkerton signed a new enrollment agreement when he switched to a different program within AIM's school. The new enrollment agreement contained the same arbitration provision.

In 2014, Pinkerton filed a lawsuit in the Circuit Court of Jackson County, Missouri, against AIM; Adrian Rothrock, an admissions representative; and W. Gerald Yagen, the school's owner, alleging the school engaged in deception, misrepresentation, and fraud. AIM moved to dismiss the suit, or in the alternative, to compel arbitration and stay the proceedings. AIM contended that the arbitration provision required delegation to an arbitrator of all threshold arbitrability disputes, including whether the arbitration

2

clause is enforceable. The trial court granted AIM's motion to compel arbitration, concluding that the arbitration provision required delegation of threshold arbitrability disputes to an arbitrator, including Pinkerton's contention that the arbitration provision was unenforceable because it was unconscionable.

Pinkerton sought a writ of prohibition from the Missouri Supreme Court to require the trial court to overrule the motion to compel arbitration because he had raised issues involving the validity and enforceability of the arbitration provision that could not be delegated to an arbitrator for determination. *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 39-40 (Mo. banc 2017). The Supreme Court found that "[t]he arbitration agreement clearly and unmistakably evidence[d] the parties' intent to delegate threshold issues of arbitrability to the arbitrator," and that the trial court properly sustained AIM's motion to compel arbitration. *Id*. at 53. The Supreme Court thus ordered the parties to proceed to arbitration. *Id.*

Pinkerton's lawsuit proceeded to arbitration. Pinkerton and AIM jointly selected the Honorable Gary Oxenhandler to serve as the arbitrator. On November 15, 2018, Judge Oxenhandler issued an arbitrator's decision denoted as a "judgment" which ruled that:

> Arbitration is supposed to be a fair process, a process that affords all parties the process they are due. Such is not the case here. For the reasons stated above, the Arbitrator finds the Arbitration Agreement unconscionable and unenforceable. This case is remanded to the Courts for appropriate action. Arbitration dismissed.

Pinkerton filed the arbitrator's decision with the trial court as an attachment to a motion to lift the stay of proceedings imposed when arbitration had been compelled. AIM did not

oppose lifting the stay, and did not challenge the arbitration decision. The trial court granted Pinkerton's motion, lifted its stay, and the parties resumed litigation of Pinkerton's lawsuit in the trial court.

On July 23, 2019, Pinkerton voluntarily dismissed his lawsuit without prejudice pursuant to Rule 67.02.[2] Three days later, Pinkerton re-filed his lawsuit, naming the same parties and asserting the same causes of action as had been asserted in his original lawsuit filed in 2014.

AIM once again moved to dismiss, or alternatively, to compel arbitration and stay the proceedings. AIM argued that the arbitration provision in the enrollment agreement was enforceable and that any challenges to enforceability of the provision had been delegated to the arbitrator for determination. Pinkerton argued that AIM was collaterally estopped from seeking to compel arbitration because an arbitrator had already found the arbitration provision to be unconscionable and unenforceable. AIM argued it was not collaterally estopped from seeking to compel arbitration because the arbitrator's decision was not a final judgment, and because Pinkerton's voluntary dismissal of the 2014 lawsuit "wipe[d] the slate clean," negating any preclusive effect of the arbitrator's decision.

The trial court denied AIM's motion to compel arbitration. The trial judge found that for purposes of collateral estoppel, the pertinent issue was whether the arbitration provision was enforceable, and that "[t]he prior action resulted in a final, valid judgment on *that* issue" when the arbitrator issued his decision. The trial court also found that

---

[2]All Rule references are to *Missouri Court Rules, Volume I -- State 2019* unless otherwise noted. Rule 67.02 permits the plaintiff in a lawsuit to voluntarily dismiss his or her lawsuit without prejudice, without order of the court, prior to the swearing of a jury in a jury tried matter, or before the introduction of evidence at trial in a court tried matter.

4

Pinkerton had established the remaining elements of collateral estoppel. Thus, the trial court concluded that AIM was collaterally estopped from seeking to compel arbitration because the arbitration provision had been determined to be unenforceable. The trial court also concluded that Pinkerton's voluntary dismissal of the 2014 lawsuit did not negate the preclusive effect of the "valid final judgment regarding the enforceability of the arbitration provision."

AIM appeals.

## Standard of Review

"We review the circuit court's denial of a motion to compel arbitration *de novo*." *Fogelsong v. Joe Machens Auto. Group Inc.*, 600 S.W.3d 288, 293 (Mo. App. W.D. 2020) (citing *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 113 (Mo. banc 2018). "Upon such review, we must first determine whether a valid arbitration agreement exists." *Sniezek v. Kansas City Chiefs Football Club*, 402 S.W.3d 580, 583 (Mo. App. W.D. 2013) (citing *Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006). If the trial court's ruling on the motion to compel arbitration includes "factual findings that bear on the existence, scope, or revocability of the arbitration agreement, then we will affirm the factual findings if they are supported by substantial evidence and are not against the weight of the evidence." *Id.* (citing *Whitworth v. McBride & Son Homes, Inc.*, 344 S.W.3d 730, 736 (Mo. App. W.D. 2011). The party asserting the existence of a valid and enforceable contract to arbitrate bears the burden of proving that proposition. *Id.*

**Analysis**

AIM raises three points on appeal challenging the trial court's conclusion that AIM was collaterally estopped from seeking to compel arbitration. In its first point, AIM argues that the trial court committed legal error because collateral estoppel is an issue of arbitrability which had been delegated to the arbitrator for determination. AIM's second point asserts that even if the trial court properly determined the issue of collateral estoppel instead of referring that matter to arbitration, the trial court erred because the arbitrator's decision was not a final judgment on the merits. In its third point, AIM claims that the trial court erred in concluding that Pinkerton's voluntary dismissal of the 2014 lawsuit did not negate the preclusive effect, if any, of the arbitrator's decision. We address the points in turn.

***Point One: Because the arbitrator's decision controls whether an arbitration agreement exists between Pinkerton and AIM, the trial court properly determined the collateral estoppel effect of the arbitrator's decision***

It is uncontested that the arbitration provision AIM now seeks to enforce was determined by an arbitrator to be unenforceable in connection with Pinkerton's 2014 lawsuit. In other words, an arbitrator previously determined that no valid arbitration agreement exists between the parties because the arbitration provision was unconscionable. "Arbitration is a matter of contract under the Federal Arbitration Act (FAA)." *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 114 (Mo. banc 2018) (citing *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "'[A] party cannot be required to arbitrate a dispute that it has not agreed to arbitrate[,]' and arbitration will only be compelled where 'a valid arbitration agreement exists . . . .'" *Hughes v.*

6

*Ancetry.com*, 580 S.W.3d 42, 47 (Mo. App. W.D. 2019) (quoting *NutraPet Sys., LLC v. Proviera Biotech, LLC*, 542 S.W.3d 410, 413-14 (Mo. App. W.D. 2017).

As such, the ultimate issue we must resolve is the preclusive effect of the arbitrator's decision that no valid arbitration agreement exists between Pinkerton and AIM. However, the initial issue we must resolve is who, as between an arbitrator and the trial court, was required to determine the preclusive effect of the arbitrator's decision. AIM views the preclusive effect of the arbitrator's decision as an issue of enforceability of an arbitration agreement that must be determined by an arbitrator based on the arbitration agreement's delegation language. *See Pinkerton*, 531 S.W.3d at 53. Pinkerton contends that the trial court was required to determine the preclusive effect of the arbitrator's decision because a trial court must first determine that an agreement to arbitrate exists before it can delegate matters regarding enforceability of the agreement to an arbitrator for determination. *See Theroff v. Dollar Tree Stores, Inc*., 591 S.W.3d 432, 440 (Mo. banc 2020) ("[T]he circuit court cannot delegate [a] matter to an arbitrator whose very existence depends upon an agreement."). We conclude that *Theroff* controls the resolution of this dispute, and that because the preclusive effect of the arbitrator's decision will control whether an arbitration agreement exists, the trial court properly determined whether AIM was collaterally estopped by the arbitrator's decision.

In *Theroff*, the Supreme Court held that in the absence of an agreement to arbitrate, a delegation provision is not effective. *Id.* at 439-40. The Court was reviewing a trial court's refusal to compel arbitration where the party opposing arbitration, who was blind, denied affixing her digital signature to documents at the time she was hired, and

7

alleged that the employer's representative did so without her assent, as the nature of the documents were not explained to her. *Id*. at 435. Though it was uncontested that the documents included an arbitration provision, whether the employee assented to the arbitration provision by affixing her digital signature was contested. *Id*. at 437. The Court framed the issue before it as one of first impression, and noted that "[u]nlike the standard scenario in which there is no dispute about whether a party signed an arbitration agreement, when a party disputes signing, the court must first decide the existence of an agreement to arbitrate." *Id*. (citing *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992) (noting that the trial court must determine in first instance whether an agreement to arbitrate exists where signature is contested) (abrogated on other grounds by *Larsen v. Citibank FSB*, 871 F.3d 1295, 1303 n.1 (11th Cir. 2017)). Noting that Theroff challenged the existence of *any* agreement to arbitrate, the Supreme Court concluded that because the "existence of the agreement to arbitrate is a prerequisite to compelling arbitration," the trial court properly determined this issue. *Id*. at 439.

The decision in *Theroff* was not unanimous. In one dissenting opinion, a minority of the court held that a controversy over signature is a contract formation issue that must be referred to the arbitrator in the presence of an unchallenged delegation provision in the arbitration agreement. *Id*. at 442-46 (Powell, J., dissenting). In a separate dissent, a minority of the court wrote separately to emphasize that assent to a contract, whether challenged based on signature or otherwise, is always a contract formation issue, and that the delegation provision in Theroff's arbitration agreement expressly delegated to an arbitrator disputes involving contract formation. *Id*. at 446-48 (Fischer, J., dissenting).

8

We believe, however, that the circumstances in this case are even more compelling than those in *Theroff*. Here, an arbitrator determined that the arbitration provision included in the enrollment agreement Pinkerton signed was not enforceable, and thus that no valid agreement to arbitrate existed. If the arbitrator's decision binds AIM, then there exists no valid arbitration agreement to enforce, including the agreement's delegation provision. Consistent with *Theroff,* where the very existence of an arbitration agreement is challenged, it is for the trial court to make that determination and not an arbitrator. In fact, this result is compelled by section 435.355.1 which provides that:

> On application of a party showing an agreement described in section 435.350, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, **but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised** . . . .

(Emphasis added.)

AIM disregards *Theroff*, and insists that the preclusive effect of the arbitrator's decision had to be determined by the arbitrator. AIM relies on *Melnuk v. Hillman*, a recent opinion which held, as a matter of first impression, that an arbitrator, rather than the trial court, was required to decide the collateral estoppel effect of a previous arbitration award on a second arbitration demand. 593 S.W.3d 674, 681 (Mo. App. E.D. 2020). But AIM's reliance on *Melnuk* is misplaced. *Melnuk* did not hold that the collateral estoppel effect of a prior arbitration decision must always be determined by an arbitrator in the face of a second arbitration demand. More importantly, *Melnuk* did not involve a scenario where the collateral estoppel effect of an earlier arbitration decision was central to determining whether an arbitration agreement even exists.

In *Melnuk*, the owners of a limited liability company entered into a buy-sell agreement where Hillman agreed to purchase Melnuk's 50% interest. *Id*. at 676. The buy-sell agreement and the operating agreement for the limited liability company each contained an arbitration provision. *Id*. at 677. The buy-sell agreement contemplated that Hillman would give Melnuk a promissory note for a portion of the purchase price, and that the note balance could be adjusted by subsequent contingent liabilities. *Id*. at 676. One such liability involved amounts paid to key employees pursuant to a phantom option plan in the event of any change of control of ownership. *Id*. The "change of control" provision in the phantom option plan was modified after the buy-sell agreement was entered into from "greater than fifty percent" to "fifty percent or more." *Id*. at 676-77. As a result, nearly $300,000 was paid out by Hillman to key employees, and Hillman notified Melnuk that the balance Hillman owed on the promissory note was being correspondingly reduced. *Id*. at 677. Melnuk disagreed with the adjustment, and claimed he had not signed the amendment to the phantom option plan modifying the definition of "change of control." *Id*.

Hillman initiated an arbitration proceeding seeking a declaratory judgment that the "change of control" contingent liability adjustments were valid under the buy sell agreement. *Id*. at 677-78. Melnuk denied the validity of the change of control adjustments, and also asserted counterclaims seeking upward adjustments of the promissory note balance for reasons unrelated to the change of control payments. *Id*. at 678. The arbitrator entered an arbitration award which stated that the issues presented in the arbitration were "ten potential adjustments" of the principal amount owed by Hillman

10

to Melnuk on the promissory note. *Id*. The arbitrator concluded that the moneys paid to key employees "met the contractual definition of a contingent liability adjustment" in the promissory note, resulting in a reduction of the amount due on the note. *Id*. However, the arbitrator expressly noted in the award that no opinion was being expressed as to whether Melnuk might have a claim for breach of fiduciary duty or some other cause of action relating to improper modification of the "change of control provision," and noted that such claims were "beyond the scope of this arbitration." *Id*.

The arbitrator's award was confirmed in early 2018. *Id*. Almost a year later, Melnuk filed a lawsuit seeking damages from Hillman on theories of breach of fiduciary duty, fraud, and conspiracy arising out of the alleged unauthorized amendment of the "change of control" provision in the phantom option plan. *Id*. Hillman moved to compel arbitration. *Id*. Melnuk argued the earlier arbitration award determined that his claims were beyond the scope of the arbitration clauses in the parties' operating and buy/sell agreements. *Id*. at 687-79. Neither party contested the existence of an arbitration agreement. The only issue was whether the scope of the arbitration agreement had been resolved by the earlier arbitrator's decision.

The trial court denied Hillman's motion to compel arbitration. *Id*. at 679. On appeal, the Eastern District characterized the dispute between the parties as whether Hillman was collaterally estopped by the arbitration award to compel a second arbitration. *Id*. Specifically, the parties disputed whether the arbitrability of Melnuk's damage claims had been decided by the first arbitration award, and whether an arbitrator or the court should determine this issue. *Id*. at 680.

The Eastern District noted that determining whether an arbitrator or a court should "determine[] the collateral estoppel effect of a prior arbitration award . . . is an issue of first impression." *Id*. After analyzing federal decisions relevant to the issue, the court concluded that "[a]n arbitrator must decide whether Hillman is collaterally estopped by the [earlier arbitration award] from compelling arbitration of Melnuk's claims for damages ***not because the parties agreed to submit threshold questions of arbitrability to an arbitrator*** but because evaluating Melnuk's collateral estoppel defense is a 'procedural question[] which grow[s] out of the dispute and bear[s] on its final disposition.'" *Id*. at 682 (quoting *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 84-85 (2002)) (emphasis added).

*Melnuk* thus cannot be read as urged by AIM for the proposition that an affirmative defense raising the collateral estoppel effect of an earlier arbitration award must always be referred for determination by an arbitrator pursuant to a delegation provision. In fact, *Melnuk* expressly dispels this conclusion. At best, *Melnuk* simply holds that "the merits of an argument challenging the scope of the issues resolved in a prior arbitration award 'must be presented to and resolved by [a] . . . second arbitration proceeding.'" *Id*. at 681 (quoting *W & T Travel Servs., LLC v. Priority One Servs., Inc*., 69 F. Supp. 3d 158, 171 (D.D.C. 2014)).

Here, there is no dispute regarding the scope of the issues resolved by the prior arbitration award. The parties agree that the prior arbitration award determined the enforceability of the arbitration provision in the enrollment agreement by concluding the provision was unenforceable because it was unconscionable. The exact same issue is

12

now framed by Pinkerton's opposition to AIM's motion to compel arbitration in Pinkerton's re-filed case.[3]  *Melnuk* is therefore of no assistance to AIM as it did not address whether an arbitration agreement exists.  Instead, because the trial court first had to determine that an arbitration agreement existed before it could compel arbitration in Pinkerton's refiled case, the trial court did not err in determining the collateral estoppel effect of the arbitrator's decision on that very issue.

AIM's first point on appeal is denied.

## Point Two:  The arbitrator's decision was a judgment on the merits

AIM next argues that even if the trial court properly determined the preclusive effect of the prior arbitration decision instead of referring that issue to an arbitrator, the trial court erroneously found the arbitrator's decision collaterally estopped AIM because the arbitrator's decision was not a judgment on the merits.

"'Collateral estoppel, or issue preclusion, is used to preclude the relitigation of an issue that already has been decided in a different cause of action.'"  *Matter of Invenergy Transmission LLC*, 604 S.W.3d 634, 639 (Mo. App. W.D. 2020) (quoting *Brown v. Carnahan*, 370 S.W.3d 637, 658 (Mo. banc 2012).  Four elements must be shown in order to give a prior adjudication preclusive effect:

> (1) the issue decided in the prior action was identical to the issue presented in the later action; (2) the prior action resulted in a judgment on the merits;[4] (3) the party against whom estoppel is asserted was a party or was in privity

[3]In its second point on appeal, AIM concedes that the issue is the enforceability of the arbitration agreement.

[4]Some Missouri cases add the word "final" before the word judgment in describing this element.  *See, e.g.*, *Fischer ex rel. Scarborough v. Fischer*, 34 S.W.3d 263, 265 (Mo. App. W.D. 2000).  As we explain, however, inclusion of the word "final" is immaterial.  What matters is whether a determination that is binding on the parties has been made on an issue--not whether the determination is "final" as in final for purposes of appeal.

with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*U-Haul Company of Missouri v. Carter*, 567 S.W.3d 680, 684 (Mo. App. W.D. 2019) (citing *James v. Paul*, 49 S.W.3d 678, 682 (Mo. banc 2001). AIM concedes that only the second element, whether the prior adjudication resulted in a judgment on the merits, is at issue in this case.[5]

"'For the purposes of collateral estoppel, an arbitration award may constitute a final judgment on the merits.'" *Melnuk*, 593 S.W.3d at 680 (quoting *Graybar Elec. Co., Inc. v. Federal Ins. Co.*, 567 F. Supp. 2d 1116, 1123 (E.D. Mo. 2008). AIM acknowledges this point, but asserts that the arbitrator's decision was not a "merits" decision, and thus cannot constitute a judgment on the merits for purposes of collateral estoppel. AIM relies on *State v. Purvis* to contend that the arbitrator merely decided where Pinkerton's dispute should be litigated, and was thus not a judgment on the merits because it was a "judgment rendered upon some preliminary or merely technical point, or by default, and without trial." 739 S.W.2d 589, 591 (Mo. App. S.D. 1987).

*Purvis* is readily distinguishable. In *Purvis*, the Southern District concluded that the State was not collaterally estopped to prove probable cause in a driving while intoxicated case even though an administrative hearing officer determined in a related license suspension proceeding that there was "no evidence in [the] file on probable

---

[5]We agree that the trial court correctly concluded that the remaining three elements for collateral estoppel have been established. The issue decided in the arbitration proceeding was enforceability of the arbitration agreement, and this is the identical issue presented to us. Further, the parties are identical, and AIM had a full and fair opportunity to litigate the issue in arbitration. Therefore, we analyze whether the prior arbitration resulted in a judgment on the merits.

14

cause." *Id.* at 590-91. The Southern District concluded that the administrative hearing officer's decision was ambiguous, as it could not be determined whether the hearing officer weighed evidence to find, on the merits, that probable cause was not established, or instead concluded that probable cause was not demonstrated because a statutory requirement relevant only to administrative suspension proceedings had not been satisfied. *Id.* Because it was impossible to say that in making a probable cause finding, the hearing officer relied on anything "other than the preliminary and technical basis of deficiencies in the arresting officer's report," the court declined to treat the hearing officer's decision as a judgment on the merits. *Id.* at 591.

In stark contrast, the arbitrator's decision entered in connection with Pinkerton's 2014 lawsuit was plainly a determination on the merits regarding the enforceability of the parties' arbitration agreement. The arbitrator dismissed the arbitration proceeding after finding there was no valid arbitration agreement to enforce because the agreement was unconscionable. This was not a preliminary or technical determination, but a substantive determination on an ultimate issue that AIM insisted be heard by an arbitrator. *Purvis* is of no assistance to AIM.[6]

AIM next argues that even if the arbitrator's decision was on the merits, it was not a judgment. AIM relies on *State ex rel. Henderson v. Asel*, where our Supreme Court addressed what constitutes a judgment, and held that "a judgment is a legally enforceable

---

[6]AIM also relies on *Med. Shoppe Int'l, Inc. v. J-Pral Corp.*, 662 S.W.2d 263, 275 (Mo. App. E.D. 1983), as additional support for the proposition attributed to *Purvis*. AIM's reliance is misplaced. *Medicine Shoppe Int'l* simply concluded that J-Pral Corporation was not collaterally estopped from raising the issue of personal jurisdiction because, when the trial court dismissed Medicine Shoppe's petition for want of personal jurisdiction, "no decision on the merits" on the issue of personal jurisdiction had yet been entered by the arbitration tribunal. *Id.*

15

judicial order that fully resolves at least one claim in a lawsuit and establishes all the rights and liabilities of the parties with respect to that claim." 566 S.W.3d 596, 598 (Mo. banc 2019). AIM argues that the arbitrator's decision was not a judicial order, and therefore cannot be a "judgment" on the merits. AIM's argument disregards authority for the proposition that an arbitration award may constitute a judgment on the merits for purposes of collateral estoppel. *See Melnuk*, 593 S.W.3d at 680. Moreover, while *Henderson* refers to a judgment as a "judicial order," it did so in the context of addressing when a judgment is appealable. 566 S.W.3d at 598-99. *Henderson* did not address what constitutes a judgment for purposes of collateral estoppel, and cannot be read to limit "judgments" for that purpose to judicial orders.[7]

Finally, AIM argues that other courts have ruled that "a decision on a motion to compel arbitration is not a final judgment on the merits that gives rise to collateral estoppel." *Pearson v. P.F. Chang's Bistro, Inc.*, No. 13-cv-2009-JLS, 2015 WL 12910914, at *4 n.4 (S.D. Cal. Feb. 23, 2015); *Lotsoff v. Wells Fargo Bank*, No. 18-cv-02033-AJB-JLB, 2019 WL 4747667, at *4 (S.D. Cal. Sept. 30, 2019). Neither case is binding on this court. *Fogelsong*, 600 S.W.3d at 295 n.3 ("This Court is not bound by the decisions of federal district courts.") (citing *Godat v. Mercantile Bank of Nw. Cty.*, 884 S.W.2d 1, 4 n.1 (Mo. App. E.D. 1994)). In any event, both decisions are readily distinguishable. Though *Pearson* noted in a footnote that a state court's order denying a

---

[7]AIM also relies on our Supreme Court's conclusion that an order sustaining partial summary judgment on only some issues in a case, including issues of arbitrability and consideration, "was not a final judgment" for purposes of appeal. *Sanford v. CenturyTel of Mo., LLC*, 490 S.W.3d 717, 719 (Mo. banc 2016). However, as with *Henderson*, a discussion of when judgments are appealable cannot be fairly read to either contemplate, or be controlling on, the issue of what constitutes a judgment on the merits for purposes of collateral estoppel.

defendant's motion to compel arbitration was not a "final judgment on the merits" supporting collateral estoppel in the same plaintiff's later filed federal court action, there is no basis from this vague reference to determine the basis for the state court's order, and more importantly, whether the order found there to be no valid arbitration agreement in existence. 2015 WL 12910914, at *4 n.4. And though *Lotsoff* rejected a plaintiff's argument that the defendant was collaterally estopped to compel arbitration where the same arbitration provision had been declared unenforceable, it is plain that the "enforceability" determination was not only made in another case involving different parties, but as well that the determination was not yet final and was being appealed. 2019 WL 4747667, at *4.

We conclude that the arbitrator's decision finding the arbitration provision in the enrollment agreement to be unenforceable was a judgment on the merits. This conclusion is supported by *Cooper v. Yellow Freight System, Inc.*, 589 S.W.2d 643, 645 (Mo. App. E.D. 1979), and by *Pratt v. Purcell Tire & Rubber Co.*, 846 S.W.2d 230, 233 (Mo. App. E.D. 1993), both of which expressly addressed the preclusive effect of a previous arbitrator's decision, and both of which concluded that "where there has been a final and binding arbitration between the parties," the facts determined in the arbitration proceeding may not be relitigated. *Pratt*, 846 S.W.2d at 233 (citing *Cooper*, 589 S.W.2d at 645).

In *Cooper*, a trucking company terminated a driver for reckless driving resulting in an accident, and an arbitration proceeding sustained the termination on the same grounds. 589 S.W.2d at 644. The driver then filed suit, alleging, *inter alia*, that the reason

17

provided for his termination was false because he did not drive recklessly resulting in an accident. *Id.* The Eastern District affirmed the trial court's grant of summary judgment for the defendant because the issue of whether or not the driver drove recklessly, was "the identical issue litigated by the two parties" in arbitration, and collateral estopped therefore barred the driver from relitigating the issue. *Id.* at 645 ("[i]f the procedure used to settle the dispute is one of the party's own choosing, as it was here, and was a final and binding arbitration between the parties, the courts may not relitigate facts determined in the arbitration proceeding.")

Similarly, in *Pratt*, a mechanic alleged, in both an arbitration proceeding and in a suit for damages, that his former employer denied his reinstatement in retaliation after he filed a workers' compensation claim. 846 S.W.2d at 230. The issue presented to the arbitrator was whether the employer had unjustly refused to allow the mechanic to return to work. *Id*. at 232. The arbitrator found that the employer had not acted in a discriminatory manner. *Id.* The Eastern District affirmed the trial court's subsequent grant of summary judgment in the employer's favor on the grounds that collateral estoppel precluded relitigating the reason for the employer's refusal to reinstate the mechanic because the same issue had already been litigated by the parties in a final and binding arbitration proceeding. *Id.* at 233 (citing *Cooper*, 589 S.W.2d at 645).

*Cooper* and *Pratt* thus hold that when a specific issue has been litigated in an arbitration proceeding, and where the arbitrator's decision expressly resolves that issue, the parties are collaterally estopped from relitigating the same issue in a subsequent proceeding. Not surprisingly, the Eastern District in *Melnuk* acknowledged this

18

precedent, and differentiated the circumstances in *Melnuk* (where the scope of what was determined in a prior arbitration was contested) from the circumstances in *Cooper* and *Pratt,* thus reinforcing that "a party is barred from asserting a claim identically presented and determined in a prior arbitration proceeding." 593 S.W.3d at 682 (citing *Cooper*, 589 S.W.2d at 645; *Pratt*, 846 S.W.2d at 233).

Here, AIM moved to compel arbitration in Pinkerton's 2014 lawsuit. In response, Pinkerton generally challenged the validity of the arbitration agreement and specifically challenged the validity of the delegation provision. Our Supreme Court found the arbitration agreement to "clearly and unmistakably evidence the parties' intent to delegate threshold issues of arbitrability to the arbitrator." *Pinkerton*, 531 S.W.3d at 53. The Court thus ordered the parties to proceed to arbitration, after concluding that the delegation provision was valid and enforceable under the FAA "'leaving any challenge to the validity of the [a]greement as a whole,' or to the other provisions within the arbitration agreement, 'for the arbitrator.'" *Id.* at 52-53 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010)). The parties thereafter agreed upon an arbitrator, and that arbitrator subsequently issued a written decision, denominated a judgment, which finally concluded that the arbitration agreement was unconscionable and unenforceable, requiring dismissal of the arbitration proceeding. AIM did not challenge the arbitrator's determination, and did not oppose Pinkerton's filing of the arbitrator's decision with the trial court in connection with a request to lift the stay of proceedings. The arbitrator's decision finally resolved the issue of enforceability of the arbitration agreement, and constitutes a judgment on the merits with respect to that issue. The trial

19

court properly concluded that AIM is collaterally estopped to relitigate that issue in Pinkerton's re-filed lawsuit.

Point two on appeal is denied.

### *Point Three:  Pinkerton's voluntary dismissal of his 2014 lawsuit without prejudice did not vacate the arbitrator's decision*

Finally, AIM contends that even if the trial court properly concluded that the arbitrator's decision was a judgment on the merits, when Pinkerton voluntarily dismissed the 2014 lawsuit, his action "wiped the slate clean" as if Pinkerton never brought the 2014 lawsuit, and thus vacated the arbitrator's decision.

AIM relies on *Williams v. Southern Union Co.*, 364 S.W.3d 228, 235 (Mo. App. W.D. 2011).   In *Williams*, the trial court partially sustained a defendant's motion to dismiss two of the plaintiff's claims.  *Id*. at 230.  The plaintiff subsequently dismissed the lawsuit without prejudice pursuant to Rule 67.02, and then refiled the suit, reasserting the previously dismissed claims.  *Id.* at 230-31.   We found that the plaintiff was not collaterally estopped to reassert the previously dismissed claims because her voluntary dismissal of the initial lawsuit "wiped the slate clean," as if the suit had never been filed.  *Id*. at 234-35.  Central to this holding, however, is the fact that pursuant to Rule 74.01(b):

> [A]ny order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form or decision is subject to revision at any time before the entry of judgment adjudicating all the claims and rights and liabilities of all the parties.

Thus, our reference to "wiping the slate clean" in connection with the plaintiff's voluntary dismissal of the initial lawsuit without prejudice pursuant to Rule 67.02 simply

acknowledged that interlocutory rulings by a trial court have no preclusive effect in a refiled lawsuit because they did not yet have a preclusive effect in the initial lawsuit.[8]

In contrast, the arbitration compelled by AIM in Pinkerton's 2014 lawsuit was a distinct and independent proceeding. It resulted in a final decision that resolved all issues before the arbitrator by virtue of the arbitrator's conclusion that the arbitration agreement was unenforceable. The arbitrator's decision was final, and was not subject to revision by the trial court. *See Cornerstone Propane, L.P. v. Precision Investments, L.L.C.*, 126 S.W.3d 419, 423-24 (Mo. App. S.D. 2004) (quoting *R.L. Hulett & Co. v. Barth*, 884 S.W.2d 309, 311 (Mo. App. E.D. 1994) ("[a]n arbitration award . . . finally concludes and binds the parties on the merits of all matters properly within the scope of the award, both as to law and facts, and the courts will have no inquiry as to whether the determination thereon was right or wrong, for the purposes of interfering with the award."). Moreover, AIM did not challenge the arbitrator's decision. Pinkerton's motion to lift the stay of proceedings attached the arbitrator's decision. Though Pinkerton's motion was not expressly titled as a motion to confirm the arbitrator's decision, the motion's success depended on recognition of the arbitration award as final and binding, as the trial court

---

[8]AIM similarly relies on *Lewis v. Department of Social Services*, 61 S.W.3d 248, 256 n.4 (Mo. App. W.D. 2001). In *Lewis*, our court evaluated potential error in the modification of a child support award, rather than collateral estoppel; however, in a footnote, our court explained that:

> [a]lthough the order of the probate judge is contained in the record and reference is made to the order, this court notes that the findings contained therein are not binding on . . . this court. The collateral estoppel doctrine prohibits relitigation of an issue only if, *inter alia*, there has been a final judgment on the merits. *Fischer ex rel. Scarborough v. Fischer*, 34 S.W.3d 263, 264 (Mo. App. 2000). Since Mr. Lewis voluntarily dismissed his motion for modification of visitation and child support prior to final adjudication, the order of the probate judge does not constitute a final judgment on the merits.

*Id.* As with *Williams*, the court's comments merely recognize that interlocutory rulings by a trial court do not have preclusive effect because they remain subject to change.

21

could not otherwise have lifted the stay and proceeded with Pinkerton's lawsuit. *See Pinkerton*, 531 S.W.3d at 53. (ordering the parties to arbitrate Pinkerton's lawsuit, including Pinkerton's claims regarding enforceability of the arbitration agreement). AIM could have challenged the arbitrator's decision by moving to vacate or modify the decision as authorized by 9 U.S.C. section 9 pursuant to one of the limited grounds described in 9 U.S.C. sections 10 and 11. AIM did not do so, leaving the trial court with no authority but to abide by the arbitrator's decision. *See, e.g.*, *Lobel Fin. Inc. v. Bothel*, 570 S.W.3d 87, 91 (Mo. App. W.D. 2018) (observing that a trial court has no authority but to confirm an arbitration award unless the award is vacated or modified or corrected as provided by 9 U.S.C. sections 10 and 11); *Cargill v. Poeppelmeyer*, 328 S.W.3d 774, 776 (Mo. App. S.D. 2010) (holding that a "court must confirm [an arbitration] award unless the opposing party moves to vacate or modify the award," and that "the party challenging an arbitration award has the burden of demonstrating that the award is not valid.").

Pinkerton's subsequent decision to voluntarily dismiss his lawsuit without prejudice did not operate to vacate the arbitrator's decision fully and finally resolving the arbitration proceeding. AIM's argument to the contrary suggests a party has the power to unilaterally vacate an arbitrator's final decision by voluntarily dismissing related litigation. There is no authority for that proposition, which would frustrate the primary purpose of arbitration to efficiently reach a final and binding decision. *See Decker v. Kamil*, 100 S.W.3d 115, 117 (Mo. App. E.D. 2003).

22

The trial court did not err in concluding that Pinkerton's voluntary dismissal without prejudice pursuant to Rule 67.02 did not "wipe the slate clean" of the arbitrator's final decision regarding the enforceability of the arbitration agreement.

Point Three on appeal is denied.

## Conclusion

The trial court's order refusing to compel arbitration is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

23